### R. E. ROE v. THE STATE.

#### No. 4117.    Decided December 9, 1908.

**1.—Murder—Evidence—Expert Witness.**

Upon trial for murder there was no error in admitting the testimony of a witness who had sufficiently qualified himself from the experience he had had with reference to gun shot wounds, to testify from appearances in regard to the place of entrance and exit of the bullets which killed the deceased.

**2.—Same—Charge of Court—Self-defense—Defense of Another—Retreat.**

Where upon trial for murder the evidence did not raise the issue of retreat; and the court in his charge submitted the law of self-defense, and defense of another, there was no reversible error in submitting the law of retreat as to self-defense but not as to defense of another. See opinion for charge of court on self-defense and defense of another which was not reversible error as applicable to the facts.

**3.—Same—Charge of Court—Fugitive—Defensive Theory.**

On trial for murder where the theory of the defense was that the defendant shot the deceased both on the ground of self-defense and the defense of another, and where there was no evidence that the deceased was armed or attempting to get a gun, the court was not required to charge on the question of an escaping fugitive from justice; even if the deceased was such fugitive; the defendant who claimed to have assisted the officer in making an arrest was not justified to shoot the deceased if he was escaping as such fugitive.

**4.—Jury and Jury Law—Diligence—Bill of Exceptions.**

Where upon motion for new trial on account of the incompetency of a juror for remarks he was alleged to have made before the trial with reference to the guilt of the defendant, the said juror denied having made such remarks, and defendant's bill of exceptions did not show that he had used proper diligence in securing the attendance of witnesses to prove said fact, and the trial judge in his explanations refusing said bill stated the want of diligence of defendant in procuring such testimony, which explanation defendant's attorneys accepted, there was no ground for reversal.

Appeal from the District Court of Marion. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*S. P. Jones* and *W. T. Armistead,* for appellant.—On question of admitting testimony with reference to entry and exit of bullets in body of deceased: Williams v. State, 30 Texas Crim. App., 429; Mitchell v. State, 38 Texas Crim. Rep., 170; Thompson v. State, 30 Texas Crim. App., 325; Swanner v. State, 58 S. W. Rep., 72. On question of court's charge on retreat: Nalley v. State, 30 Texas Crim. App., 456; Mitchell v. State, supra; Bonner v. State, 29 Texas Crim. App., 223. On question of incompetency of juror: Long v. State, 10 Texas Crim. App., 186; Washburn v. State, 31 Texas Crim. Rep., 352; Long v. State, 32 Texas Crim. Rep., 140.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at five years in the penitentiary. The evidence discloses that D. J. Paris had shortly prior to the alleged homicide arrested a nephew of the deceased and that the prisoner effected his escape. Ascertaining that the night prior to the homicide the fugitive spent the night at the residence of the deceased, Paris summoned a posse of three, among whom was appellant. They went to the residence of Rabb, the deceased, seeking to find the party who had escaped. The inference from the record is that the fugitive had been arrested for burglary. Upon arriving at the premises of the deceased the posse took precaution to so surround the house as to prevent the escape of the fugitive if he should be found on the premises. Appellant and Paris went near the house, appellant remaining outside in charge of two parties whom they found on the premises. Paris went in the house to search for the fugitive. The evidence is in conflict as to whether Paris struck the deceased over the head with a pistol at the lot before going to the house or at the gallery as he went to enter the house. The State's evidence is that he knocked the deceased down by a blow with a six-shooter on the head at the lot where there was found evidences of blood. The deceased bled freely and the physician testified that the blow received on the head at the point of contact, just over the left ear, would cause copious hemorrhage. Paris testifies that the negro followed him to the house and interdicted his going into the house, catching him by the arm at the time; whereupon, he, Paris, knocked him down with a six-shooter and went on into the house. The State's theory was that after deceased was struck at the lot with a six-shooter, he went on to the house and passing around it, appellant ordered him two or three times to stop and he would not, and appellant fired two or three shots, killing him almost instantly. It seems that deceased was an old negro and very deaf. The appellant's theory was that the deceased had gone in the house and got a shotgun and was

following Paris, who had left the main residence to go in an out-house, and that deceased was in the act of shooting at the time he, appellant ordered him to stop and the deceased, not obeying, he fired the first shot in defense of Paris; that when he fired the first shot deceased turned as if to shoot him, when he fired the other two shots in defense of himself. The testimony is rather voluminous and much of the detail we have omitted. The witness Simmons, justice of the peace, testified to having held an inquest over the body and examined the wounds and having detailed to him the occurrences happening at the killing. The jury acquitted Paris and convicted appellant. Simmons also testified in effect that deceased, Dave Rabb, was shot twice in the back each ball going through his body. One ball entering to the right of the spine and below the shoulder blade coming out in front; the other ball entered to the left of the spine and also came out in front. On cross-examination he admitted that he did not know these facts and that same was his opinion. Whereupon the appellant moved the court to exclude the same because it was the opinion of the witness and was not testimony and therefore inadmissible. This is appellant's first assignment of error and in it he refers to bill of exceptions No. 1. The proposition is that it is error to admit testimony of a witness as to the appearance of, or effect of gun shot wounds on deceased's body, or to admit his testimony as to the course of bullets, as to place of entering, or of exit, unless he is conclusively shown to be an expert in the knowledge of gun shot wounds and the course and effect of such shots or wounds. And that it is error to allow such testimony from an expert unless in answer to a hypothetical question containing a full statement of the conditions existing in the case in which the opinion is sought. Referring to the bill of exceptions, we find that Simmons testified in chief in reply to questions by the district attorney, that the deceased Dave Rabb, was shot twice in the back, each of these shots passing through the body; one of the shots was to the right of the spine, and below the shoulder blade, and passed out in front below and to the left of the left nipple, and the other shot entered to the left of the spine and passed out on the right side in front, near the rib. On cross-examination the following questions and answers were made and given: "Q. It is only your opinion that deceased was shot in the back; you don't know it? The witness answered: Well, I did not see him shot. I judge from the appearance of the ball, from the orifice the ball made. I don't know whether he was shot. I just judged from that, from the appearance of the wound. I was eleven miles away when the shooting occurred, and was only present as coroner to find the cause of his death." Appellant's attorney then moved the court to exclude that part of the witness' testimony given in chief, wherein he stated that the balls entered the back of deceased and came out in front. This was overruled. The court

qualifies this bill as follows: "The foregoing bill of exceptions is about correct, as far as it goes, but it does not go far enough; it does not state all the facts. When the motion to exclude was made, the district attorney re-crossed the witness and he stated, that he had served the rise of four years in Lee's army, during the Civil War; that he had seen thousands of men shot, and had examined their wounds; that by experience he could tell the place of entry, and the place of exit. The place of entry was smooth, and the tissues press in, while the place of exit, was larger, and was not as smooth, and the tissues were pressed out. In this way he could tell the place of entry and the place of exit. This bill as now amended, is certified to by me to be correct and is now approved and ordered filed." Signed by the Judge. Under this statement and qualification, we are of opinion this testimony was admissible. The witness showed himself sufficiently expert and experienced with reference to gun shot wounds to testify in regard to their place of entry and exit.

Exception is reserved to that portion of the court's charge in regard to the law of self-defense. The particular clause to which exception is reserved reads as follows: "A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, or the life or person of another person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger if to himself, is in no event bound to retreat in order to avoid the necessity of killing his assailant." The charge further elaborated the law of self-defense and required the jury to acquit appellant on the theory that he had the same right to defend Paris, as Paris had the right to defend himself, and that if they believed that deceased from his act, or conduct, or from his words, or from both, or from all the evidence, caused appellant to have a reasonable expectation or fear of death, or serious bodily injury to Paris, and that acting under such reasonable expectation or fear, appellant shot and killed the deceased, then they would find both defendants not guilty; that appellant had the same right to defend Paris that Paris had to defend himself and to the same extent. Under the facts of this case, we are of opinion that there is no error shown in the charge. As already stated, under the State's case, the law of retreat was not necessary to be given in charge. Paris, under appellant's theory, was not aware of the danger to himself because he was going to another house and did not know that the deceased was following him with the gun, if in fact he was doing so. We are of opinion that the law of retreat was not necessary to be given, either as it related to appellant or Paris. This comes under the rule laid down in Hudson v. State, 28 Texas Crim. App., 323, and the line of

cases following that case. Nor is it in line with Dobbs v. State, 51 Texas Crim. Rep., 113. There is at least no such error in this matter as requires a reversal.

Again it is insisted that the court erred in not charging the jury that if defendant shot deceased, believing him to be an escaping burglar, or that he was going to get a gun, he would be justified. Appellant's contention is that these were pertinent and defensive matters on the trial. We are of opinion that this position is not well taken. Had the deceased been the escaping party or the fugitive whom the officers were seeking, they would not be authorized to shoot him simply because he was escaping and there is no evidence that the deceased, whether appellant thought him to be the escaping party or not, was going to get a gun. The State's evidence shows that he did not have any gun at all, but was just moving around the house, and under Bush v. State, 40 Texas Crim. Rep., 539, and Lynch v. State, 24 Texas Crim. App., 350, this would not justify shooting. The defensive theory, however, shows the deceased was trying to kill Paris and for that reason the first shot was fired and the other two shots were fired, because, appellant said, he thought the deceased had turned with a view of taking his life. The question under this proposition was not raised by the evidence.

It is contended further, that the motion for a new trial should have been granted on account of the prejudice and incompetency of the juror Tyler. Tyler was one of the jurors, answered the questions satisfactorily and was accepted by both parties. The affidavit of Sirman was filed, showing in effect that Tyler, before the trial, made remarks to him showing that he thought appellant was guilty of murder and ought to be punished. Tyler was brought back under process and denied making such statements and also denied making similar statements to Albright, both before and after the trial. An inspection of the bill of exceptions will show that sufficient diligence was not used to obtain the evidence of Sirman and Albright. It will further show that the court had notified the attorneys some time prior to the adjournment that he intended to adjourn the court Saturday at 1:30 o'clock p. m. and when this matter came up late Friday afternoon he concluded to hold over and give the parties an opportunity to test the matter in regard to the juror. With reference to these matters, as well as the diligence, which we hold was insufficient, we refer to the bill of exceptions. It will be noted that appellant tendered a bill of exceptions which the court certifies as being incorrect. This bill was rejected and the following filed in lieu of it, and appellant having accepted this bill without any controversy or contest, it will be taken as setting out the matter correctly:

"The bill of exceptions No. 2, prepared by the attorneys for the defendant, and which is annexed hereto, is refused and this one is prepared by the court in its place.

"The court in Marion County, would have expired at midnight on Saturday, the 30th day of November, 1907; District Court opened on Monday, 2d day of December, 1907, at Boston, in Bowie County, Texas. One train leaves Jefferson about 1:30 p. m. and another about 6:47 p. m. on Texas and Pacific Railway for Texarkana, in Bowie County. For a week before court adjourned, I had told W. T. Armistead, attorney for defendant, and all the attorneys at the Jefferson Bar, that I expected to wind up the court and leave Jefferson on Texas and Pacific Railway at 1:30 p. m. Saturday the 30th day of November. This had been known by all officers of the court, and all the attorneys for a, week; on Friday afternoon, the motion docket was called for trial. This motion was called about 3 o'clock p. m., November 29th; the attorney for defendant asked the court to please pass the motion till next morning, which was done. On Saturday morning at about 9 o'clock, this motion was called for trial, for the first time, it was made known to the district attorney, and to the court, that the affidavit of Sirman was annexed to said motion, and raised an issue of fact, which made it necessary for the State to meet it. The clerk of the court stated that W. T. Armistead, filed the affidavit with him, at 1:30 p. m. November 29th, and immediately withdrew it, and that except for filing it had never been in his office, and was never among the papers; the district attorney wanted to introduce evidence to the effect that it was not possible to get the juror Tyler there before midnight and have the court pass on the motion. The juror lived eighteen miles west of Jefferson. I refused to act on the motion and stopped court, for this was all I had to do, and had an attachment issued for said juror, Tyler, and for the affiant Sirman. About 10 o'clock the deputy sheriff started horseback for said parties; Sirman lived some five miles from Tyler, I told the officer to bring them both, but if he could not get both of them by midnight to do his best, to get the juror. George Adams, a deputy sheriff, of Marion County, lived in the west end of the county. Avinger is a station in Cass County, Texas, about sixteen miles west of Jefferson. The juror lived in Marion County about five miles from Avinger. Adams lived in the country and could not be reached by telegraph or telephone. About 12 o'clock it occurred to the sheriff and district attorney that Adams may be in Avinger, as it was Saturday and this was his postoffice. They got in communication with Avinger on the telephone, and found that Adams was there; they then got him over the phone and told him to go and get the juror Tyler, and bring him to Jefferson on the evening train which gets to Jefferson about 4:30 p. m. Adams, without an attachment, immediately went after the juror and got him to Avinger in time for the evening train and arrived with him in Jefferson at 4:30 p. m. The court heard the evidence on the motion for a new trial found in the statement of facts, It was after five o'clock when this evidence

was closed. I stayed in the courthouse until after dark, after six o'clock and then signed the minutes, adjourned court and got to the depot just in time for the 6:45 p. m. train. When I left the courthouse nothing had been heard of the officer who left on horseback, at 10 o'clock a. m. The attorneys for defendant objected to the adjournment of court, and wanted the court to remain open till midnight to give them a chance to get one Albright. They stated in substance, that they had not seen Albright, and did not know what his evidence would be, but that they believed they could corroborate the affiant Sirman by said Albright. They said he lived some sixteen or eighteen miles west from Jefferson. They said they had sent some parties after him, and they believed he would be there. They nowhere stated that they had sent an officer with an attachment for him. I understand they had sent a private party for him. I don't now believe that any officer was sent for him or that any attachment was issued for him. If the attorney representing the defendant had let it be known on Friday evening that this issue would be raised all parties could have been had by Saturday morning. It seems to me that this issue was concealed from the State till the last minute, no affidavit of Albright is annexed to the bill prepared by the attorney for defendant, and nowhere does he state that Albright appeared at Jefferson before midnight or at any time.

"I certify the above bill of exceptions is a true and correct statement of the facts, as they occurred, and now approve it and order it filed, as a part of the record in this case.

"(Signed) P. A. Turner,<br>"Judge."

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled January 20, 1909, without written opinion.—Reporter.]