Asa Rutland v. The State.

No. 5866.   Decided June 9, 1920.

Rehearing denied November 3, 1920.

1.—Murder—Self-defense—Charge of Court—Right of Perfect Self-defense.

Where, upon an appeal from a conviction of murder, appellant insisted that the jury should have been instructed charging the law of perfect .self-defense, but the record showed that he used a loaded pistol, forcibly arrested and disarmed the deceased upon a public street, took possession of his pistol, forced him to march toward the County Jail as his prisoner, overcoming the hesitation of deceased while en route by striking him a blow upon the head with the pistol, causing the flow of blood, and after arriving at the jail, when the deceased attempted to enter it contrary to the demand of the defendant because he feared the deceased would obtain a weapon, shot and killed the deceased, he was not entitled to such charge, besides, the court did instruct upon self-defense, and there was no reversible error.

2.—Same—Rule Stated—Right of Self-defense—Trespasser.

Under the facts of the instant case the rule applies that the slayer in such case stands in the attitude of a trespasser, the situation being analogous to that of one who provokes a difficulty or furnishes the occasion therefor, in the course of which he slays his adversary to save himself.  Following Peter v. State, 23 Texas Crim. App., 687, and other cases.

3.—Same—Charge of Court—Case Stated—Manslaughter—Self-defense.

Applying these principles to the facts viewed  in their most favorable light to the appellant, the homicide was an unalwful one, and the trial could have resulted in no verdict lower than the grade of manslaughter;  however, the court charged, nevertheless, on self-defense, and there was no reversible error.

4.—Same—Charge of Court—Threats—Case Stated—Manslaughter.

Where, the issue of perfect self-defense was not raised by the evidence, and the charge on manslaughter is not complained of, failure of the court to accurately charge the law on threats in his charge on self-defense, cannot be made a subject of just complaint on appeal, besides in the requested charges the law of threats was submitted, and there was no reversible error. Following Tuller v. State, 8 Texas Crim. App., 509.

5.—Same—Charge of Court—Retreat.

Where, upon trial of murder, the facts were not such as to render the charge erroneous in failing to instruct the jury that defendant was not bound to retreat, there was no reversible error.  Following Hughes v. State, 47 Texas Crim. Rep., 220, and other cases.

6.—Same—Rehearing—Perfect Self-defense—Favorable Charge.

Where, upon motion for rehearing, appellant's main contention was that he had been deprived of a fair and correct charge on the law of perfect self-defense, but the record showed that the court's charge to the jury was more than favorable in applying the law to the facts in the case, and if there was error, such error as may have been committed was in his favor in submitting the issue of perfect self-defense in any form, there was no reversible error.

7.—Same—Case Stated—Self-defense—Rule Stated.

Where, upon trial of murder the evidence showed that deceased was appellant's prisoner, arrested by him and under his control, it was immaterial whether such arrest was legal or illegal, viewed in the light of self-defense, under the facts, and he had no right to kill the deceased, and the attempt of deceased to go in the house to secure a weapon for the purpose of shooting defendant would afford no reason for perfect self-defense in the instant case. Following Lynch v. State, 24 Texas Crim. App., 350, and other cases.

8.—Same—Theory of Self-defense—Charge of Court—Case Stated.

Disregarding the State's theory of the case and taking appellant's view of it as testified by himself, the law of perfect self-defense was not raised by the evidence, and of course the law of retreat is not necessary to be discussed; besides, the charge given by the court was such that appellant cannot successfully urge error.

Appeal from the District Court of Ector. Tried below before the Honorable Charles Gibbs.

Appeal from a conviction of murder; penalty, thirty-five years' imprisonment in the penitentiary.

The opinion states the case.

*Stinson, Chambers & Brooks,* for appellant.—On question of self-defense: Arto v. State, 19 Texas Crim. App., 126; Parker v. State, 22 id., 105; Pye v. State, 171 S. W. Rep., 741.

On question of threats: Buckner v. State, 117 S. W. Rep., 803; Lundy v. State, 127 id., 1032; Lockhart v. State, 111 id., 1025; Hightower v. State, 119 id., 691; Huddleston v. State, 112 id., 64.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, JUDGE.—The conviction is for murder, with punishment fixed at confinement in the penitentiary for thirty-five years.

For several days immediately preceding the homicide, the appellant and deceased had been associates, and appeared to have been dissipating by use of intoxicants, and also by engaging in gaming. There was testimony of some difficulties in which pistols were exhibited and mutual threats made. The appellant testified, and after relating his version of these affairs in detail, said in substance that while in a restaurant he looked out and saw the deceased Hearrell

and two boys coming down the street; that he thought they were looking for him, and went to the back door with a view of escaping notice. While on the street he stepped into a side door of another building, and when the parties reached him he stepped out and said: "Mr. Hearrell, you ought not to be looking for me to kill me. Take your hand off your gun." Appellant said:

"I then walked up there and took the gun out of his pocket and said 'Let's go over to Bradford's (sheriff), and get under a peace bond.' I said 'Mr. Hearrell, you ought not to want to kill me.' He said, 'There ain't no use starting anything like that.' I said, 'Let's go over and see Mr. Bradford, and get under a peace bond,' me, or him, or both of us; and I said, 'You boys better come in front of me, I don't know any of you, and you better go in front of me.', When we got near the signboard, Mr. Hearell stopped, and I said, 'Mr. Hearell, you had better go on.' He said, 'I ain't going a damn step further,' and I hit him with the gun, and said, 'Claude, go on;' and I said, 'Claude, I guess you think I am awful, but you are going to kill me, and I know it,' and I said, 'Go on.' We went to the jail and I said, 'Let's see Mr. Bradford.' Mrs. Bradford came to the door and said Mr. Bradford was not there, but she would send for him. While waiting, I said, 'Mr. Hearell, don't go in the jail, Mr. Bradford will be here in a minute.'

In his testimony, appellant said that the reason he made this remark was that he was afraid that the deceased would go in the jail and get a gun to kill him.

"I was afraid that if he went in there he would come out with a gun, and kill me. He said he would. He says, 'Well, I will go in there anyway, I can get it.' I said, 'Please don't go in there;' and he said he would, and I said, 'I don't guess you will,' just like that, and he turned, just turned like he was going to grab me, and he had his right hand in his pocket as well as I remember. I didn't believe I was going to kill him. I don't know why I shot him or nothing. I did not shoot to kill him. I was afraid he would get a gun and kill me, which I knew he would, is the reason I shot. I was afraid at that time he would kill me. He started in the jail, and I said 'Don't go in there, Claude,' and he turned of a sudden, like he was going to grab me, and that is when I shot him. He was on the sidewalk. I don't know whether Mrs. Bradford was standing in the door or not. My purpose in taking his gun away from him, and taking him to the jail was I didn't want to hurt him. I took the gun out of his pocket and asked him to go over to the jail because I wanted to get it over with."

Hill, a witness for the appellant, testified that he was present during the few moments after the parties arrived at the jail, before the shot was fired; that the appellant was telling the deceased that he had better keep still or he would shoot him, and the deceased seemed like he was going to walk in the jail; that the appellant said "Claude,

you had better stand still," and, quoting, "it seemed like Claude sorter leaned toward him, and maybe took a step toward him, and Asa punched him in the stomach with the gun, and he staggered back. He shot as soon as he punched him back. After the shot deceased stood for a moment, then went to the jail, and fell inside the door. Deceased was turned kinder aside to Asa at the time the pistol fired. I think they stayed at the jail longer than a minute, I don't know how long."

One of the State's witnesses, a young lady, said: "I noticed Asa Rutland come around the corner behind the old mercantile building. Then he turned and ran back to the side door, and concealed himself That is a brick wall. He concealed himself there, and took his gun out of his pocket and cocked it, waiting; and I looked around and saw three men coming I recognized Mr Hearrell. They came on around the corner, and Asa stepped out and held them up. I didn't see any more then, I put my arm over my face. When I looked again, he had two guns. One man turned round, and started to go back, and Asa said he wanted him too, and they marched on down the street. When he stepped out he just pointed his gun at them. I covered my face, and didn't see any more for a minute. Mr. Hearrell had nothing in his hands; they were down by his side, and he didn't make a move as long as I saw him."

Another witness testified that he saw the appellant with a gun in each hand, three men walking in front of him; that he hit deceased over the head with a pistol, and deceased "kinder addled" up against the side of the wall, and appellant punched him with the other pistol, and they marched on, passing the hotel, and a few moments later the shot was fired.

The wife of the sheriff testified that in response to a knock she went to the door, and saw the appellant and deceased and two other parties. Quoting: "Asa said, 'Is Brad in there,' and I said, 'No, I will get him.' He said, 'No, I am going to kill Mr. Hearrell.' I said, 'Please don't.' The blood was running down Mr. Hearrell's face. He was making no move, was standing there, and I was standing within three or four feet of him. Asa cursed Mr. Hearrell just before he shot. Hearrell, after the shot, staggered and groaned, and I stepped to him and took him by the arm, and led him to the door. Asa told me to get out of the way, he was going to shoot again, that I would have to excuse him for cursing. I let Mr. Hearrell down, and in the attempt tore my clothing considerably. After the shot was fired, Asa came in behind Mr. Hearrell, holding the guns to his back, cursing. While in this position he snapped one of the guns three times. Mr. Hearrell while there did not say a word. He wasn't moving or doing anything at the time the first shot was fired. He was standing still."

It was shown that the bullet entered deceased about a half inch from the left nipple, between the third and fourth rib, and passed through the body, and came out between the fifth and sixth rib.

The appellant insists that the court, in charging the law of self-defense, failed to accord him his full rights. This is predicated upon the assumption that there were facts before the jury which, if true, supported the right of perfect self-defense. The appellant, using a loaded pistol, forcibly arrested and disarmed the deceased on a public street, took possession of his pistol, and forced him to march as his prisoner to the county jail, overcoming the hesitation of deceased while en route by striking him a blow upon the head with a pistol, which inflicted a wound causing the flow of blood. After arriving at the jail, when the deceased attempted to enter it contrary to the command of the appellant, fearing the deceased would obtain a weapon, the appellant shot him. Granting that the deceased had previously threatened to kill the appellant, and that he threatened to do so at the time, we think the appellant was not justified in taking his life. Appellant's acts were such as gave the deceased the right to arm himself, and use all requisite force to free himself from the illegal restraint put upon him by the appellant, and in preventing the exercise of this right the law would not justify the appellant in killing the deceased. The appellant had no right to arrest the deceased, to deprive him of his property, to assault him, or to restrain him of his liberty. This conduct was unlawful. The law applicable is stated by Judge Hurt in these words:

"The slayer in such case stands in the attitude of a tresspasser, his situation being analogous to that of him who provokes a difficulty or furnishes the occasion therefor, in the course of which he slays his adversary to save himself; and of whom this court said in Reed v. State (11 Texas Ct. App., 509) ; 'If, however, he was in the wrong; if he himself was violating, or in the act of violating the law, and on account of his own wrong was placed in a situation where it became necessary for him to defend himself against an attack made upon him which was superinduced or created by his own wrong, then the law justly limits his right of self-defense, and regulates it according to the magnitude of his own wrong.' " Peter v. State, 23 Texas Crim. App., 687.

Speaking of the right of one under circumstances such as surrounded the deceased, and condemning as unsound the proposition that the aggressor would have a right to slay when the person sought by force to resist the aggression, the same judge said:

"A is arrested by a private person without authority. A did not resist the arrest. A has no right to escape from such an arrest, and hence the person making the illegal arrest is vested with the authority of a full-fledged officer, armed with all proper authority, and A must go with the trespasser wheresoever he desires, and can obtain relief by *habeas corpus,* we suppose, if his consent has not deprived him

of this right. We defy the production of a single authority in support of this proposition. Such a doctrine would be sweet to the highway robber. He would select his time, arrest his man, take him to one side for the purpose of fleecing him, and the prisoner would have no right to regain his liberty, because he had yielded to the arrest without resistance; nor could any other person intervene, for they would have no greater or other rights that the prisoner." Miers v. State, 34 Texas Crim. Rep., 189.

Applying these principles to the facts, viewed in their most favorable light to the appellant, the homicide was an unlawful one, and the trial could have resulted in no verdict lower than the grade of manslaughter. The court, however, charged the jury on the law of self-defense on apparent danger, upon the theory that the conduct of the deceased might have evidenced an intent to execute the threat to kill the appellant.

In his submission the court failed to embody an instruction specifically informing the jury that the appellant would be justified in acting upon his information concerning threats, although the threats might not have, in fact, been uttered by the deceased. Such an omission should not be made. Since, however, the issue of perfect self-defense was not raised by the evidence, and the charge on manslaughter is not complained of, failure of the court to accurately charge the law on threats in the charge on self-defense cannot be made a subject of just complaint on appeal. This view is emphasized by the fact that two special charges requested by the appellant upon the law of apparent danger, and his special charge submitting the law of manslaughter, were given to the jury, and in one of these the law of threats is submitted in the same manner as that in which it is embodied in the court's main charge. Tuller v. State, 8 Texas Crim. App., 509; Branch's Annotated Texas Penal Code, sec. 1946.

The facts were not such as to render the charge erroneous in failing to instruct the jury that appellant was not bound to retreat. Carter v. State, 30 Texas Crim, App., 551; Hughes v. State, 47 Texas Crim. Rep., 220; State v. Gardner, 2 L. R. A., New Series, note p. 61.

The record disclosing no error justifying a reversal of the judgment, its affirmance is ordered.

*Affirmed.*

ON REHEARING.

November 3, 1920.

DAVIDSON, PRESIDING JUDGE.—During the last term of this court an opinion was rendered affirming the judgment herein. A vigorous motion for rehearing has been filed and ably presented to this court by brief and oral argument.

The main contention by appellant is that he was deprived of a fair and correct charge on the law of perfect self-defense. As we understand this record the court's charge to the jury was more than favorable, and if there was error, such error as may have been committed was in his favor in submitting the issue of perfect self-defense in any form. Taking appellant's theory of the case as set out by his motion for rehearing, as well as in his original submission, and statements of the testimony as found in the original opinion, it seems to exclude the idea of perfect self-defense. There had been previous trouble between the parties. Omitting, so far as the question of self-defense is concerned, the testimony of the State, which by the way was in direct conflict with that for the appellant, we find that appellant states that he understood or thought and was led to believe that deceased was following him with a view of executing a threat to take his life or do him serious bodily injury; that he placed himself in a doorway, and as deceased approached he stepped out and presented his pistol at deceased and took a pistol from him; that he then marched deceased to the jail with the statement, substantially, that they would go to the jail, see the sheriff and enter into peace bonds. When they arrived at the jail he called for the sheriff, Mr. Bradford. Mr. Bradford's wife answered, stating that he was not present. Appellant says that deceased then said he would go inside of the jail, leaving the impression upon appellant's mind that he would go in and arm himself and come back. Appellant refused to let the deceased leave, and ordered him to remain where he was, which the deceased did, and appellant contends deceased turned towards him and reached or made a move with his hand as if to reach him and he shot him. He says he thought deceased was going in the jail to get a pistol and kill him and, therefore, he shot. Mrs. Bradford testified directly in opposition to what the appellant stated, saying that deceased did nothing and was not reaching out his hand, and was standing still at the time appellant shot him, and that appellant stated before he shot that he was going to kill him; that she importuned but he fired, and as deceased was falling she caught him and appellant undertook to shoot him again, snapping his pistol two or three times at the back of deceased. Omitting, however, Mrs. Bradford's testimony and taking that of appellant as presenting his viewpoint of perfect self-defense, we find that he had an unarmed prisoner, one from whom he had taken a pistol, and emphasizes this fact by stating that deceased said to him he wanted to go in the house and as appellant thought to get a pistol. There could be then, under appellant's viewpoint of it, nothing to indicate to his mind that deceased was armed or was in a position to shoot him. He was appellant's prisoner, under control and under arrest, and whether that arrest was legal or illegal it occurs to us would make no difference, viewed in the light of self-defense. He had no right to shoot the man whether he had him under arrest legally or illegally under the

facts. That the movements of deceased in attempting to go into the house to secure a weapon for the purpose of shooting appellant would afford no reason for perfect self-defense we think has been settled by numerous decisions. We mention Lynch v. State, 24 Texas Crim. App., 350. The matter there is pretty fully and rather exhaustively discussed in an opinion by Presiding Judge White. There are numerous opinions by this court following the Lynch case. In 40 Texas Crim. Rep., 539 is Bush v. State, which follows and reaffirms the doctrine laid down in the Lynch case. The Bush case was approved in Snell v. State, 52 Texas Crim. Rep., 305; Mitchell v. State, 51 Texas Crim. Rep., 76; Bryant v. State, 51 Texas Crim. Rep., 70; Rowe v. State, 55 Texas Crim. Rep., 132; Franks v. State, 54 Texas Crim. Rep., 577; Toliver v. State, 53 Texas Crim. Rep., 332; Courtney v. State, 57 S. W. Rep., 625; Herrington v. State, 63 S. W. Rep., 563. Those cases are largely predicated upon the proposition that the danger must be immediate and not remote. In this case there could have been no immediate danger that appellant would be killed by deceased. He was not armed and when he started towards the house for the purpose of getting a pistol, as appellant understood, appellant prevented his going. Appellant was in no danger at the hands of deceased, from his own testimony, of being either killed or his body suffering serious injury. It is not thought necessary to further discuss than was done in the original opinion the question of arrest. It would make no difference under the law of self-defense, under the circumstances of this case, whether he was or was not under legal arrest. He had not placed from any viewpoint the appellant in danger of life or serious bodily injury, either actual or apparent. The mere fact that he extended one of his arms in the direction of appellant would not indicate that appellant's life was in danger or his body of serious harm. Disregarding then the State's theory of the case and taking appellant's view of it as testified by himself, the law of perfect self-defense we think was not suggested. It would not serve any useful purpose to discuss further any question growing out of the facts bearing upon this question. Self-defense not being in the case, of course the law of retreat is not necessary to be discussed. Viewing this record as we do, and the evidence as disclosed in the statement of facts, we are of opinion that from appellant's viewpoint the question of perfect self-defense was not an issue, and the charge given was favorable to appellant and one to which he was not really entitled. We hold therefore that appellant cannot successfully urge error.

The motion for rehearing will, therefore, be overruled.

*Overruled.*