**Muhammad Lutharius YOUNG, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–97–00017–CR.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 8, 1999.

Decided Dec. 9, 1999.

708

Sydney Young, Paris, for appellant.

Kerye Ashmore, Lamar County Attys. Office, Karla R. Baugh, Asst. County Atty., Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Muhammad Lutharius Young was indicted for the attempted murder of Brad Hilliard. A jury found Young guilty and made an affirmative deadly weapon finding. The trial court assessed punishment at twenty years' imprisonment.

Upon original submission to this Court, Young contended that (1) the evidence was legally and factually insufficient to support the conviction, and (2) his trial counsel was ineffective for failing to request an instruction on the defense of necessity and for failing to object to inadmissible evidence. We reversed on the basis that Young received ineffective assistance of counsel because the evidence raised the defense of necessity and counsel failed to request an instruction.[1] However, the Court of Criminal Appeals determined that counsel's performance was not deficient in failing to

---

**1.** *Young v. State,* 957 S.W.2d 923 (Tex.App.-Texarkana 1997), *rev'd, Young v. State,* 991 S.W.2d 835 (Tex.Crim.App.1999).

request an instruction on necessity, and therefore reversed our judgment and remanded the case for further proceedings consistent with its opinion in *Young v. State.*[2] Because we did not address Young's remaining contentions in our original opinion, we will do so below.

There is evidence that on August 1, 1996, Deputy Sheriff Scott Roebuck attempted to stop a vehicle after it failed to dim its headlights. Deputy Roebuck followed the car, and the driver pulled into the driveway and backyard of Don Hilliard's home. As the officer pulled up to the house, the driver of the car ran away. The remaining occupant of the car, Elijah Woods, identified the driver as Natharius or Lutharius. Deputy Roebuck looked for the driver, but could not find him. Brad Hilliard, Don Hilliard's son, drove up to the house. The deputy informed Brad Hilliard of the situation, and Brad led him inside to his father. Deputy Roebuck and the Hilliards then searched the home and surrounding buildings. Finding no one, the officer left.

Soon after the deputy's departure, the Hilliards saw Young walking down F.M. 79 near their home. Although the Hilliards had not been given a description of the driver, they assumed that Young was the suspect for whom the police were looking. Don and Brad Hilliard got into their truck, pulled onto F.M. 79, and came to a sudden stop directly behind Young. Don Hilliard, a 247-pound white male, jumped out of the truck and approached Young, a small black male. Don Hilliard twice ordered Young to get into the truck, and Young twice refused. Don Hilliard testified that he then told Young that he could do this the easy way or the hard way and thereby "verbally forced" Young into the truck. Young testified that Don Hilliard also physically forced him into the truck.

With Young in the cab of the truck, Don Hilliard initially drove the three men toward town. However, they soon changed directions and drove toward Lake Gibbons, where the Hilliards believed police officers to be. They then again changed directions after passing a police car going the other way. After the third change of direction, Young became more nervous and began asking repeatedly where they were going. The testimony is conflicting as to whether Don Hilliard told Young he was taking him to the police. Young demanded to be let out of the truck several times, but Don Hilliard refused. The Hilliards claim that Young then began to threaten them, told them to stop the car or he would rip out the transmission, said that he did not care about his life or their lives, and said that he would kill them all if they did not stop the truck and let him out. Don Hilliard testified that Young then put his foot on the gas pedal and grabbed the steering wheel. Testifying to the contrary, Young said he was afraid for his life and that he only reached for the driver's door in an attempt to get out of the truck. The truck veered off the road to the right, hitting a ditch, a culvert, another truck, and finally gasoline pumps at a nearby grocery store. When Young got out of the truck, he ran from the Hilliards and flagged a police officer. All three men were taken to local hospitals.

Approximately one month after the incident, on August 26, 1996, Young was arrested and charged with attempted murder. Young was appointed legal counsel in late October, but Young's original counsel withdrew, and on February 7, 1997, new counsel was appointed. On February 24, voir dire began, and two days later a jury convicted Young for the attempted murder of Brad Hilliard.

In his first point of error, Young contends that the evidence was legally and factually insufficient to support his conviction for attempted murder. Specifically, Young points out that he was forced to get into a truck with two strangers, and that despite several pleas, they refused to re-

2. *Young,* 991 S.W.2d at 839.

lease him. Considering the circumstances, Young contends that the evidence only showed his fear and confusion and did not show that he formed the specific intent to kill Brad Hilliard.

■ A person commits the offense of attempted murder if, with the specific intent to cause the death of an individual, he does an act amounting to more than mere preparation that tends but fails to effect the death of the individual.[3] A specific intent to kill is a necessary element of attempted murder.[4]

When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5] We will not disregard, realign, or reweigh the evidence.[6] The trier of fact is the exclusive judge of the witnesses' credibility and the weight given their testimony.[7] The trier of fact may believe or disbelieve any portion of the testimony.[8] It is the jury's prerogative to choose between conflicting inferences raised by the evidence.[9]

In conducting a factual sufficiency review of the evidence, we view all of the evidence, though not in the light most favorable to the prosecution. The verdict is to be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust.[10] Due deference must be given to the jury's assessment of the witnesses' credibility and their resolution of any conflicts in the evidence.[11]

According to Don Hilliard's testimony, Young told the Hilliards that he would kill them all if they did not let him out of the truck. Young pushed the gas pedal to the floor and put his arm through the steering wheel so that "it looked like he tried to crawl under there because he pulled on the steering wheel with his head going underneath the dashboard." As a result, the truck veered off the road to the right, although Don Hilliard tried to turn the steering wheel back to the left as hard as he could. Brad Hilliard testified to a similar version of the events. However, Brad Hilliard did not see Young step on the gas pedal or grab the steering wheel, but he did see Young with his left arm through the steering wheel after the truck left the road and hit a ditch.

On the other hand, Young testified to a different version of the events. Young denied threatening the Hilliards, pushing the gas pedal to the floor, and hanging his elbow through the steering wheel. Young further denied that he intended to hurt either of the Hilliards. He testified that he was just thinking about getting away from them because he believed his life was in danger. Young testified that he did not know where the Hilliards were taking him, and when he asked, Don Hilliard told him to shut up. After they changed directions for the third time, Young began to panic and repeatedly demanded to be let out of the truck. Don Hilliard refused to release him, so Young reached over to open the

3. *See* Tex. Pen.Code Ann. §§ 15.01(a), 19.02(a)(1) (Vernon 1994).

4. *Flanagan v. State*, 675 S.W.2d 734, 741 (Tex.Crim.App. [Panel Op.] 1982) (opinion on motion for rehearing).

5. *Teer v. State*, 923 S.W.2d 11, 17 (Tex.Crim. App.1996).

6. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

7. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim.App.1984).

8. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim.App.1986).

9. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim.App.1991).

10. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996).

11. *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim.App.1996); *Clewis*, 922 S.W.2d at 135.

driver's door with the intent to jump out of the truck. When Don Hilliard tried to stop Young from opening the door, a struggle ensued and the truck ran off the road as a result. After the wreck, Young ran away from the Hilliards and flagged an officer. The officer also testified that Young flagged him.

Tim Ray, a trooper with the Department of Public Safety for seventeen years, testified that he had investigated hundreds of motor vehicle incidents resulting in death or serious bodily injury. In Trooper Ray's opinion, there was a force being exerted that kept the driver from correcting the truck's path to the left, such as someone grabbing and hanging onto the steering wheel. The Hilliards' truck went in a fairly straight line after it left the road, despite hitting a ditch, a parked truck, and jumping a culvert. He testified that if two people were fighting, as Young claimed, and there was no resistance on the steering wheel, the truck would not have traveled in a straight line, for the slightest thing would have turned the wheel.

When viewing the evidence in the light most favorable to the verdict, the jury, as the exclusive judge of the witnesses' credibility and the weight to be given their testimony, could have found that Young had the specific intent to kill Brad Hilliard. The testimony of Trooper Ray, and Don and Brad Hilliard provided evidence that Young acted with the specific intent to kill. Moreover, when viewing all of the evidence, the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. The jury could have properly chosen to believe Trooper Ray, and Don and Brad Hilliard,

and to disbelieve Young's version of events. Therefore, we hold that the evidence is legally and factually sufficient to support Young's conviction. This point of error is overruled.

In Young's second point of error, he contends that he received ineffective assistance of counsel in violation of the United States and Texas Constitutions. Specifically, Young contends that his trial counsel was ineffective for failing to object to the State's leading questions, and to the introduction of extraneous misconduct, hearsay, and nonresponsive evidence.[12] Furthermore, it is clear from the record that counsel committed an additional error by failing to request an instruction on the right to resist an unlawful citizen's arrest. Although this point was not raised by Young, once an appellate court has jurisdiction over a case, the limits of the issues that the court may address are set only by the court's discretion and any valid restrictive statute.[13]

It is well settled that a defendant in a criminal case is entitled to reasonably effective assistance of counsel.[14] The standard for testing claims of ineffective assistance of counsel was set forth in *Strickland v. Washington*[15] and adopted for Texas constitutional claims in *Hernandez v. State*.[16] The appellant must prove by a preponderance of the evidence that (1) his counsel's representation was deficient, and (2) the deficient performance was so serious that it prejudiced his defense.[17] This means that the appellant must show his counsel's representation fell below the standard of prevailing professional norms, and there is a reasonable probability that,

---

12. Upon original submission, Young also contended that his trial counsel was ineffective for failing to request an instruction on the defense of necessity, but the Court of Criminal Appeals determined that such conduct was not deficient because the defense of necessity was not raised by the evidence.

13. *Whatley v. State*, 946 S.W.2d 73, 76 (Tex.Crim.App.1997) (citing *Rezac v. State*, 782 S.W.2d 869 (Tex.Crim.App.1990)).

14. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986).

15. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

16. 726 S.W.2d 53 (Tex.Crim.App.1986).

17. *Id.* at 57.

but for counsel's deficiency, the result of the trial would have been different.[18] A conviction will be reversed only if trial counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.[19]

In applying this test, the first issue is whether the performance of Young's trial counsel was deficient. We must look to the totality of the representation in making this determination.[20] The burden is on Young to overcome the presumption that the challenged conduct could be considered sound trial strategy under the circumstances at the time of trial.[21] The review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation.[22]

The first claim of deficiency arises out of counsel's failure to object to the State's leading questions and the introduction of extraneous misconduct, hearsay, and nonresponsive evidence. In order to successfully argue that counsel's failure to object amounted to deficient performance, appellant must show that the trial court would have committed error in overruling the objection and that there was no reasonable trial strategy for failing to object.[23]

While trial counsel could have objected to some of the complained-of testimony as being nonresponsive and hear-

say, we cannot rule out the possibility that counsel purposefully did not object so as not to call attention to damaging evidence that was otherwise admissible or merely cumulative. Most of the out-of-court statements were nonhearsay. All of Young's alleged out-of-court statements were admissions by a party-opponent, including Young's alleged statements that he did not care about the Hilliards' lives and that he would kill them all if they did not stop the truck.[24] Don Hilliard's alleged out-of-court statements, asking Young if he was the man the police were looking for and then telling Young that he was taking him to the police, were admissible as evidence of their effect on the listener, rather than of the truth of the matter asserted.[25] And, assuming that the testimony by Trooper Ray and Deputy Roebuck concerning Young's flight from arrest was hearsay, such testimony was cumulative of evidence properly introduced by Officer Dale Woods. Therefore, we cannot say that trial counsel erred in failing to object to the complained-of hearsay and nonresponsive evidence.

Looking next at the evidence of extraneous misconduct, the record reveals that the State referred to an earlier disturbance between Young and his girlfriend, both in its opening statement and in its case in chief.[26] Under Rule 404 of the Texas Rules of Evidence, in order for evidence of an extraneous act to be admissible, it must be relevant to a material issue

---

18. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim.App.1998).

19. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

20. *Rodriguez v. State*, 899 S.W.2d 658, 665 (Tex.Crim.App.1995).

21. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim.App.1991).

22. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

23. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim.App.1996).

24. Tex.R. Evid. 801(e)(2).

25. Tex.R. Evid. 801(d).

26. In opening argument, the State averred that it expected to prove that earlier in the evening, a police officer went out to the lake "because of an altercation that had been reported between Lutharius Young and a lady." Then, in the State's case in chief, Officer Rick Moncibiaz testified that there had been a disturbance at the lake between Young and his girlfriend.

in the case other than the defendant's character.[27] The Court of Criminal Appeals has determined that evidence of extraneous misconduct is not admissible for providing contextual "background" evidence.[28] Yet, even if the evidence of the disturbance involving Young was inadmissible, the reference to the disturbance was so brief that it was reasonable for counsel to refrain from objecting so as to minimize the attention called to the extraneous misconduct. Therefore, we cannot say that trial counsel erred in not objecting to the complained-of evidence of extraneous misconduct.

■ The record further reveals that the State improperly asked leading questions of Don Hilliard, Trooper Ray, and Elijah Woods. Unless the witness is determined to be a hostile witness, an adverse party, or a witness identified with an adverse party, counsel should not ask leading questions on direct examination except to develop testimony.[29] Yet, despite this rule, it is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway. Such is the case with the leading questions asked of Don Hilliard and Trooper Ray. On the other hand, the leading questions asked of Woods resulted in the modification of the witness's testimony, and such evidence very well might not have come in without the leading.[30] Woods was not a hostile witness, an adverse witness, or a party

identified with an adverse witness, so there was no legal basis for allowing the State to lead the witness. Yet, there is a strong presumption that counsel performed within the wide range of reasonably professional assistance.[31] Because the record provides no reference to explain why counsel failed to object to the leading questions asked of Woods, Young has failed to rebut the presumption that such conduct was a reasonable trial strategy.[32] Therefore, we conclude that Young has not made the required showing that trial counsel committed error in failing to object to the leading of Woods.

■ Another possible deficiency in representation arises out of counsel's failure to request an instruction on the right to resist an unlawful citizen's arrest. Failure of trial counsel to request a jury instruction on the only defense presented at trial can render his performance deficient if it would have been error for the trial court to refuse such an instruction and there is no possible strategic reason for failing to request the instruction.[33]

■ An arrest occurs when a person's liberty of movement is restricted or restrained.[34] Under the Texas Code of Criminal Procedure, a private citizen has the right to make an arrest under certain limited circumstances:

(a) A peace officer or *any other person,* may, without a warrant, arrest an

---

27. TEX.R. EVID. 404(b); *Felder v. State,* 848 S.W.2d 85, 97 (Tex.Crim.App.1992).

28. *Mayes v. State,* 816 S.W.2d 79, 87 (Tex. Crim.App.1991).

29. TEX.R. EVID. 611(c).

30. For example, the State asked Woods, "So when you saw this guy what you thought is that looks like Lutharius [Young], there he goes, right?" and Woods agreed. Yet, up to that point Woods testified that he did not recognize the person running from the car, but that he thought it was Young because Young was driving the car before Woods passed out. Likewise, in another question the State asked, "And you had known him

[Young] for awhile prior to this time?" Again Woods agreed, despite the fact that up to that point Woods testified that he had not known Young for long.

31. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

32. *See Thompson v. State,* 9 S.W.3d 808, (Tex. Crim. App. 1999).

33. *Vasquez v. State,* 830 S.W.2d 948 (Tex. Crim.App.1992).

34. *Burkes v. State,* 830 S.W.2d 922, 925 (Tex. Crim.App.1991).

offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.[35] Thus, a private citizen may make an arrest only at the time he sees an actual offense being committed.[36]

A person who is the subject of an unlawful citizen's arrest has the right to use all force necessary to extricate himself from the illegal restraint.[37] This common-law right has existed throughout Texas history[38] and remains intact despite the enactment of statutory provisions negating the right to resist unlawful arrests by peace officers.[39] When a person is unlawfully restrained by a private citizen, he has the legal right to resort to such means as appear to him to be reasonably necessary to free himself from the unlawful restraint.[40] The right to defend against such an unlawful deprivation of liberty is an extension of the law of self-defense,[41] though the two defenses are distinct.[42]

It is beyond dispute that Young was the subject of an unlawful citizen's arrest. The Hilliards did not see Young commit a criminal offense of any kind. Yet, Don Hilliard verbally forced Young into the truck, and when Young repeatedly requested to be let out of the truck, Don Hilliard refused.

There is evidence supporting the possibility that Young was trying to free himself from this unlawful arrest. Young testified that he was scared and that he believed his life to be in danger. He claims that he reached across the driver in an attempt to open the door and save his life. According to Young, as he reached for the door a struggle ensued, causing the steering wheel to be hit and the truck to leave the road. Young stated that throughout the event, he was "just thinking about getting away from them and trying to get somewhere safe."

A defendant is entitled to a defensive instruction on every issue raised by the evidence regardless of whether it is contradicted, and the defendant's testimony alone may be sufficient to raise a defensive issue.[43] Young testified that he acted out of fear for his life.[44] Although there is

---

**35.** Tex.Code Crim. Proc. Ann. art. 14.01(a) (Vernon 1977) (Emphasis added.).

**36.** *Turner v. State*, 901 S.W.2d 767, 771 (Tex. App.-Houston [14th Dist.] 1995, writ ref'd).

**37.** *Forbau v. State*, 492 S.W.2d 516 (Tex.Crim. App.1973); *Barnes v. State*, 172 Tex.Crim. 303, 356 S.W.2d 679 (1961).

**38.** *See generally Rutland v. State*, 88 Tex.Crim. 114, 224 S.W. 1088, 1090 (1920) (citing *Miers v. State*, 34 Tex.Crim. 161, 29 S.W. 1074, 1077 (1895)) (In 1895, the Court of Criminal Appeals explained the right to resist an illegal arrest with the following example: "A. is arrested by a private person without authority. A. did not resist the arrest. A. has no right to escape from such an arrest, and hence the person making the illegal arrest is vested with the authority of a full-fledged officer, armed with all proper authority, and A. must go with this trespasser wheresoever he desires, and can obtain relief by habeas corpus.... We defy the production of a single authority in support of this proposition. Such a doctrine would be sweet to the highway robber.").

**39.** Tex. Pen.Code Ann. § 9.31(b) (Vernon Supp. 2000), § 38.03(b) (Vernon 1994).

**40.** *Matterson v. State*, 142 Tex.Crim. 250, 152 S.W.2d 352, 354 (1941).

**41.** *Forbau*, 492 S.W.2d at 518.

**42.** The Court of Criminal Appeals has held that a proper charge on self-defense does not excuse the trial court from submitting a requested charge on the right to resist an unlawful arrest, if raised by the evidence. *Mitchell v. State*, 135 Tex.Crim. 176, 117 S.W.2d 443, 445 (1938). Also, the Court has treated the two defenses separately, implying that a defendant is entitled to a charge on his right to resist an illegal restraint when the evidence raises the issue of restraint and the defendant testifies that he was attempting to free himself from the illegal restraint. *Emanus v. State*, 526 S.W.2d 806 (Tex.Crim.App. 1975).

**43.** *Thomas v. State*, 678 S.W.2d 82, 84 (Tex. Crim.App.1984).

**44.** Whether Young's belief was reasonable and whether Young used more force than was necessary under the circumstances were fact questions for the jury, had the defense been

a conflict as to specifically what happened at the time of the wreck, Young does not deny that his efforts to escape the vehicle caused the wreck, but merely states a different version of how the wreck occurred. In accordance with the crime of attempted murder, Young admits to doing an act, amounting to more than mere preparation, that tends but fails to effect the death of another, i.e., Young admits reaching across the driver of a moving vehicle, attempting to open the door, and struggling with the driver of the vehicle.

As an extension of the law of self-defense, a charge on the right to resist an unlawful arrest is available despite a defendant's denial of an intent to kill or injure.[45] Thus, Young's denial of an intent to kill should not prevent him from obtaining an instruction on his right to resist an unlawful arrest. Similarly, the fact that Young denied jerking the steering wheel should not prevent him from obtaining such an instruction. Young admitted to triggering the events that caused the steering wheel to be hit.[46] And, just as Young need not admit intending to kill or injure, he need not admit the intentional act of jerking the steering wheel when the commission of such an act affirmatively shows an intent to kill or injure.

In *Matterson v. State*,[47] the defendant was on trial for murder. She testified that the deceased grabbed her and refused to let her out of his truck, so she pulled out a pistol in an attempt to free herself. The deceased immediately reached for the gun, a scuffle ensued, and the gun discharged. The defendant did not admit to aiming the gun at the deceased, nor did she admit pulling the trigger. The Court of Criminal Appeals held that the defendant's testimony was sufficient to entitle her to an instruction on her right to use all means to extricate herself from an illegal restraint.

Likewise, in *Forbau v. State*,[48] the arresting police officer testified that the defendant violently jerked and kicked, resulting in the officer falling to the ground. The defendant, on the other hand, testified that the officer grabbed him and spun him around, causing the two of them to fall. The defendant did not admit using any violence. However, the Court of Criminal Appeals held that "Taken as a whole, the evidence raised the issue that *if* appellant used or attempted to use unlawful violence upon the officer, he did so in an effort to free himself from the restraint of an unlawful arrest."[49]

As in *Matterson* and *Forbau*, it would have been error in this case for the trial court to refuse a requested instruction on Young's right to free himself from an unlawful arrest. The Court of Criminal Appeals has agreed that Young's testimony raised the possibility that he was trying to free himself from an unlawful arrest.[50] There is no possible strategic reason for trial counsel to fail to request an instruction on the only defense presented at trial, and such failure, in and of itself, renders counsel's performance deficient.[51]

▆▆▆ In looking at the entirety of trial counsel's representation, we cannot over-

---

properly submitted. *See Hayes v. State*, 728 S.W.2d 804, 808 (Tex.Crim.App.1987).

**45.** For self-defense cases on this issue see *Martinez v. State*, 775 S.W.2d 645 (Tex.Crim. App.1989); *Sanders v. State*, 632 S.W.2d 346 (Tex.Crim.App. [Panel Op.] 1982); *Garcia v. State*, 492 S.W.2d 592 (Tex.Crim.App.1973).

**46.** *Johnson v. State*, 715 S.W.2d 402, 406 (Tex.App.-Houston [1st Dist.] 1986), *writ ref'd*, 738 S.W.2d 287 (Tex.Crim.App.1987) (defendant who denied any participation in the victim's death is not entitled to an instruction on self-defense.).

**47.** 152 S.W.2d 352.

**48.** 492 S.W.2d 516 (decided before the Legislature enacted the statute negating the right to resist an unlawful arrest by a peace officer).

**49.** *Id.* at 518 (Emphasis added.).

**50.** *Young*, 991 S.W.2d at 838.

**51.** *See Young*, 991 S.W.2d at 839 n. 5 (citing *Vasquez*, 830 S.W.2d at 951).

look the seriousness of trial counsel's error. "[A] criminal defense lawyer must have a firm command of the ... governing law before he can render reasonably effective assistance of counsel."[52] This error alone is sufficiently egregious to overcome the strong presumption that counsel's representation was within the realm of reasonably competent assistance.[53] Therefore, we conclude that counsel's overall performance was deficient. Young has satisfied the first component of the *Strickland* test.

Under the second component of the *Strickland* test, Young must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[54] In other words, Young must show that his counsel's deficient performance prejudiced his defense such that his trial cannot be relied on as having produced a just result.[55]

 Much like in the present case, in *Vasquez,* the defendant claimed ineffective assistance of counsel based on trial counsel's failure to request a jury instruction on the defense of necessity—the only defense available to the defendant.[56] Applying the *Strickland* test, the Court of Criminal Appeals found counsel's performance to be deficient. Then, under the second prong of *Strickland,* the Court concluded that "Because the evidence did raise the defensive issue of necessity, and because appellant's counsel failed to request a jury instruction on the issue, the jury was pre-

cluded from giving effect to appellant's defense."[57] Likewise, in the present case, the failure to instruct the jury on the right to resist an unlawful restraint precluded the jury from factoring in Young's testimony that he was acting in an attempt to free himself from the Hilliards. This deficiency undermines our confidence in Young's conviction sufficiently to convince us that the result of the trial might have otherwise been different. Therefore, we conclude that Young's trial cannot be relied on as having produced a just result, and as such, the second component of the *Strickland* test is satisfied.

We further conclude that, by proving both components of the *Strickland* test by a preponderance of the evidence, Young has met his burden of proving that he received ineffective assistance of counsel in violation of the United States and Texas Constitutions. We sustain Young's second point of error.

This case is reversed and remanded to the trial court for a new trial.

---

**52.** *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990).

**53.** Although the Court of Criminal Appeals suggested in *Thompson v. State* that there must be affirmative evidence in the record to show that the alleged error was not trial strategy, the Court acknowledged that a single egregious error can sufficiently demonstrate that counsel's representation was deficient. *See Thompson v. State,* 9 S.W.3d 808 (Tex.Cr. App.1999). Moreover, in a similar case, *Vasquez v. State,* the Court of Criminal Appeals concluded that there was no possible strategic reason for failing to request an instruction on

the only defense presented at trial. *Young,* 991 S.W.2d at 839 n. 5 (citing *Vasquez,* 830 S.W.2d at 951). And, although *Vasquez* was brought to the Court's attention by the dissent in *Thompson,* the Court did not choose to overrule the prior decision.

**54.** *Jackson,* 973 S.W.2d at 956.

**55.** *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

**56.** *Vasquez,* 830 S.W.2d at 948.

**57.** *Id.* at 951.