In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00172-CR


______________________________




LOUIE MATTHEW HANKEY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 21378




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 In a trial consolidated with his codefendant, Saronna Little, the jury found Louie Matthew
Hankey guilty of aggravated sexual assault of a child and assessed his punishment at fifty-five years'
imprisonment. See Tex. Penal Code Ann. § 22.021(a)(1)(B) (Vernon Supp. 2006) (criminalizing
aggravated sexual assault), § 12.32 (Vernon 2003) (defining punishment range for first-degree
felonies). Hankey now appeals, asserting he received ineffective assistance of counsel at trial. We
affirm the judgment.

I. A Hearing on a Motion for New Trial Is Not a Prerequisite to Raising a Strickland (1)
Claim


 In its brief to this Court, the State suggests that a claim of ineffective assistance of counsel
must be preserved at the trial court level before it may be raised on appeal. The State's argument
hinges on its interpretation of Bone v. State, 77 S.W.3d 828 (Tex. Crim. App. 2002), a decision the
State interprets as procedurally requiring that a trial court have conducted a hearing on a motion for
new trial before an appellant may raise a claim of ineffective assistance on direct appeal. The State's
interpretation of Bone and the current caselaw regarding claims of ineffective assistance of counsel
claims is, however, not correct.

 Three years after it decided Bone, in Andrews v. State, 159 S.W.3d 98 (Tex. Crim. App.
2005), the Texas Court of Criminal Appeals acknowledged that there are cases in which ineffective
assistance claims may be raised on direct appeal and the court noted that such claims may, in some
cases, achieve success in obtaining a reversal on direct appeal without the necessity of first having
sought a formal hearing at which trial counsel has the opportunity to explain his trial strategy or
otherwise address the alleged ineffective assistance claim. In Andrews, the prosecutor made a
misstatement of the law during closing arguments. Id. at 100. Andrews claimed in the intermediate
appellate court that he had received ineffective assistance of counsel at trial because counsel had
failed to object to the prosecutor's error. Id. at 100-01. The intermediate court disagreed and
affirmed the trial court's judgment after noting that trial counsel should not be found ineffective
without first being given an opportunity to explain the reasons for not having objected to the
prosecutor's misstatement of the law. Andrews v. State, 106 S.W.3d 402, 406-07 (Tex.
App.--Houston [1st Dist.] 2003), rev'd, 159 S.W.3d 98 (Tex. Crim. App. 2005). On discretionary
review, the Texas Court of Criminal Appeals concluded "that, under the unusual circumstances of
this case, there could be no legitimate trial strategy in failing to object to the prosecutor's
misstatement . . . ." Andrews, 159 S.W.3d at 100. That court then sustained Andrews's claim of
ineffective assistance and remanded the case for a new punishment hearing. Id. at 103-04. 

 Since the decision in Andrews, the Texas Court of Criminal Appeals has not yet suggested
a retreat from its position that a hearing on a motion for new trial is not a necessary procedural
requirement for all claims of ineffective assistance. Thus, as it relates to the case now before this
Court, the State's general contention to the contrary is without foundation in current Texas
jurisprudence.

II. Ineffective Assistance Claims Require Two Types of Proof

 To succeed on appeal in raising a claim that one's trial counsel provided ineffective
assistance, an appellant must demonstrate by a preponderance of the evidence (1) that counsel's
representation fell below an objective standard of reasonableness and (2) that this deficient
performance prejudiced appellant's defense. Strickland, 466 U.S. at 687; Andrews, 159 S.W.3d at
100-01; Bone, 77 S.W.3d at 833. "It is critical that an appellant demonstrate the record shows both
the alleged deficiency(ies) and the alleged prejudice." Bessey v. State, 199 S.W.3d 546, 555 (Tex.
App.--Texarkana 2006, pet. granted). Under Strickland, the appellant "must prove that counsel's
representation so undermined the proper functioning of the adversarial process that the trial cannot
be relied on as having produced a just result." Mosley v. State, 141 S.W.3d 816, 826 (Tex.
App.--Texarkana 2004, pet. ref'd). The appellant must meet his burden as to both prongs of the
Strickland test; should the proof fail as to either, then we must overrule the claim of ineffective
assistance. Id. For example, under Strickland's first prong, if we can envision a legitimate trial
strategy to explain counsel's alleged ineffectiveness, then we are foreclosed from sustaining the
appellant's claim of reversible error. See Goodspeed v. State, 187 S.W.3d 390, 392-93 (Tex. Crim.
App. 2005).

 We begin our analysis of an ineffective assistance claim with the presumption that counsel
performed competently at trial. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We
also presume that counsel's decisions were reasonably professional and were motivated by sound trial
strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In the absence of direct
evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic
motivation if any can be imagined. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). 
We will not conclude that the challenged conduct constitutes deficient performance unless the
conduct was so outrageous no competent attorney would have engaged in it. Id.; see Thompson, 9
S.W.3d at 814. With this analytical framework in mind, we now turn to Hankey's claim of
ineffective assistance.

III. The Record Does Not Support Hankey's Claim of Ineffective Assistance

 Hankey contends his trial counsel provided ineffective assistance by failing to object to some
of the State's evidence. More specifically, Hankey contends two key pieces of otherwise
inadmissible evidence came before the jury: (a) "outcry witness" testimony from the victim's mother
and (b) a videotape of the victim's 2004 forensic interview. Both the mother's testimony and the
videotape interview serve to incriminate Hankey. The trial record shows Hankey's counsel did not
object to either piece of evidence, both of which Hankey believes were inadmissible as a matter of
law. Thus, Hankey now asserts that the erroneous admission of this incriminating evidence, without
any objection from his trial counsel, had a substantial and prejudicial impact on the jury's finding of
guilt. Based on this impact, Hankey concludes there is no reasonable trial strategy that could account
for allowing his trial counsel's acquiescence to the admission of this damning evidence. 

 A. Testimony by the Victim's Mother

 Texas law permits the State to introduce what would otherwise be considered inadmissible
hearsay (2) in a case where the accused is charged with aggravated sexual assault (or other enumerated
offenses), and where the alleged victim was twelve years of age or younger at the time of the offense,
if the hearsay sought to be admitted qualifies as what has come to be called testimony of the child's
"outcry." Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon 2005). Our law permits the "first
person, 18 years of age or older, other than the defendant, to whom the child made a statement about
the offense" to testify about the moment wherein the child details the defendant's criminal conduct. 
Id. It is possible for there to be multiple outcry witnesses if each individual outcry concerns an event
different from the other outcry(ies). Broderick v. State, 35 S.W.3d 67, 73 (Tex. App.--Texarkana
2000, pet. ref'd). This potential for multiple outcry witnesses exists because "an outcry witness is
not person-specific, but event-specific." Id. Nevertheless, both the applicable statute and our
caselaw are clear on the singular proposition that "there may be only one outcry witness to the
victim's statement about a single event." See, e.g., id.

 In this case, the State called the victim's mother, Carol, during its case-in-chief. Carol
testified on direct and during cross-examination by Little's attorney that she was told by the victim
that Hankey and codefendant Little had sexually assaulted the victim about one month before the
victim made her outcry. Carol testified this "outcry" occurred while she and the victim were at
Carol's workplace in June or July 2001. Carol testified the victim was thirteen years of age at the
time of this outcry, a statement which the victim herself confirmed during her own testimony. 

 However, the record in this case unequivocally demonstrates that Carol was not the first
person over eighteen years of age to whom the victim reported these same details of the sexual
assault by Hankey and Little. Instead, the victim, Carol, and all the other witnesses in this case
identified Brenda Farley as the first person over eighteen years of age to whom the victim first
reported the details of the sexual assault. In addition, after reviewing the record and comparing the
details of the various witnesses' statements, the record before us clearly reflects that the victim
omitted no significant details of the sexual assault from her initial outcry to Farley such as would
enable the trial court (or this Court) to classify Carol as a proper outcry witness for any additional
criminal conduct beyond that which the victim had first disclosed to Farley. Cf. Martinez v. State,
178 S.W.3d 806, 814-15 (Tex. Crim. App. 2005) (outcry failed to meet statutory requirements for
admission; trial court erred by admitting outcry testimony over hearsay objection). Therefore,
Carol's testimony about the victim's outcry was hearsay, (3) and such testimony was not excepted from
the hearsay rule by Tex. Code Crim. Proc. Ann. art. 38.072. Cf. Broderick, 35 S.W.3d at 73-74
(trial court erred by determining police officer was proper outcry witness for "touching" incident, but
did not err by determining officer was proper outcry witness for "licking" incident). But, as noted
above, Hankey's counsel did not object to this testimony during trial as being improper hearsay or
for its failure to meet the statutory requirements for an exception to the hearsay rule; the testimony
was, therefore, admitted for all purposes at the trial against Hankey and Little.

 B. Forensic Interview

 The State also played for the jury a video recording of an interview of the victim that had
been recorded March 26, 2004, nearly three years after the victim initially reported the sexual assault. 
Hankey's trial counsel did not object to the State playing this recorded interview for the jury. The
victim says during both her interview and her trial testimony that she was raped by Hankey and
Little, providing virtually the same details of the crime in both instances. (Thus, the videotape
served to do little more than repeat the victim's trial testimony.) Hankey now contends this interview
was inadmissible because no evidentiary rule or statute permits the admission of this videotape. 

 Hearsay is not admissible except as provided by our evidentiary rules or by statute. Dunn
v. State, 125 S.W.3d 610, 613-14 (Tex. App.--Texarkana 2003, no pet.). In Dunn, the trial court
admitted a video recording of a child's outcry regarding being sexually assaulted. Id. at 612-13. We
concluded that neither the Texas Rules of Evidence nor Article 38.072 of the Texas Code of
Criminal Procedure authorizes a trial court to admit, over a proper hearsay objection, such video
evidence. Instead, Article 38.072 "clearly contemplates that a person, subject to confrontation and
cross-examination, will testify about what was said." Id. at 614 (emphasis added). 

 In the case currently on appeal, we perceive nothing in the record that might have justified
the trial court in overruling a properly-lodged hearsay objection to the admission of the victim's
videotaped forensic interview. Cf. Broderick, 35 S.W.3d at 73-74. Yet, as Hankey's trial counsel
did not make such an objection, the trial court was never called upon to exclude the now
complained-of evidence.

 C. A Possible Trial Strategy Exists to Explain Counsel's Failure to Object

 While it would be possible to criticize Hankey's trial counsel for allowing the admission of
this otherwise inadmissible evidence (both Carol's testimony regarding the victim's outcry and the
2004 recorded interview), we can also just as easily theorize a reasonable strategic reason for
Hankey's trial counsel's failure to raise an objection to the now complained-of evidence. For
example, it is possible Hankey's trial counsel believed that admitting Carol's testimony regarding the
victim's outcry, as well as playing the victim's videotaped interview, would be helpful as part of
counsel's efforts to undermine the victim's credibility. In a case like this where the verdict ultimately
turns on whether the jury believes or disbelieves the victim, it is a reasonable trial strategy for
defense counsel to allow the admission of any evidence which might subsequently assist counsel in
persuading the jury that the victim is not worthy of belief or credibility in the jury's eyes. In this
case, Carol's testimony and the recorded forensic interview might both be seen as pieces of evidence
to which Hankey's trial counsel could point as being evidence that undermines the victim's
credibility.

 Concerning the basic facts surrounding the sexual assault, the victim's testimony, Carol's
testimony, and the videotaped forensic interview are (with some divergences) generally consistent
about the details of the crime. This is because the source of these testimonies is all the same--the
victim herself. On the videotape, the victim relates the following story: She and her best friend were
babysitting Hankey's and Little's children in the latter's home one evening in June 2001. Everyone
had been in Hankey and Little's bedroom when Hankey and Little asked the victim's friend to leave
the room. The victim contended that, once the friend left, the sexual assault occurred. Little
reportedly removed the victim's tampon and told Hankey to sexually assault the victim, which he did. 
The victim then screamed, was ultimately able to push Hankey away, put her clothes back on, and
flee the room. The victim did not leave Hankey and Little's home, however; instead, the victim spent
the night and remained at the house for part of the following day. 

 During cross-examination, Hankey's attorney was able to highlight some problems with the
story the victim gave during the videotaped interview. When the victim's best friend testified, this
friend admitted that she never heard the victim scream that night, despite the mobile home's
relatively thin walls and despite being only a few feet away from the bedroom where the assault took
place. And even though she is close friends with the victim, this best friend also confessed that she
herself did not believe that the victim's story made sense. In front of a different jury, this testimony
might have served to severely undermine the victim's credibility.

 Similarly, during both the videotaped interview and Carol's testimony, it became clear that
Carol and the victim first reported the crime to police in 2001. Yet, between 2001 and 2004, neither
the law officers nor Carol did anything to follow through with seeking punishment for the reported
crime--a fact which Hankey's trial counsel argued suggests that the police themselves did not
originally believe a crime had actually occurred. Had Carol not been allowed to testify, and had
Hankey's trial attorney not acquiesced to the admission of the videotaped interview, counsel might
not have been able to solicit evidence of the fact that no police agency had investigated this case for
over three years because, perhaps, the police themselves did not believe the victim's story. This line
of reasoning might also have been effective in persuading a different jury to conclude that the victim
in this case lacked credibility and, therefore, would render a verdict of acquittal.

 On summation, defense counsel did point out some contradictions between the testimony of
the victim at the time of trial and her videotaped statement. Hindsight can be incredibly accurate;
trial attorneys ply their profession without that advantage. While a tactical decision to not object to
the admission of evidence that is otherwise inadmissible (when that evidence might also be used to
point out inconsistencies in the victim's story and might be used to demonstrate that various
witnesses and police agencies do not themselves believe the victim's story) might not have proven
to be a successful trial strategy in this particular case, we cannot say such a strategy is either
unreasonable or patently ineffective. Accordingly, because we can theorize a reasonable strategy to
explain counsel's alleged ineffective assistance, the record before us will not support a finding that
Hankey has carried his burden of satisfying Strickland's first prong. As such, we must overrule his
claim of ineffective assistance.

 There being no other points of error raised, we affirm the trial court's judgment.




 Bailey C. Moseley

 Justice


Date Submitted: April 11, 2007

Date Decided: May 24, 2007


Publish
1. Strickland v. Washington, 466 U.S. 668, 687 (1984).
2. Hearsay is an unsworn out-of-court statement offered at trial for the truth of the matter
asserted. Hearsay is inadmissible at trial except where allowed by rule or statute. Tex. R. Evid. 801,
802.
3. See Tex. R. Evid. 801, 802.