In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00066-CR


______________________________




GALE LYNN CAREY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


Hunt County, Texas


Trial Court No. CR0600917




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A Hunt County jury found Gale Lynn Carey guilty of driving while intoxicated (DWI), a
class A misdemeanor. The trial court sentenced Carey to 300 days' confinement in the Hunt County
Jail. On appeal, she complains of ineffective assistance of counsel.

I. FACTUAL BACKGROUND

 On November 5, 2005, ranch owner, Leo Faubion, and ranch foreman, V. T. Simmons, had
stopped for gasoline in Greenville. Simmons was in the driver's seat, and Faubion was the
passenger. The two men had just finished fueling and had gotten back in the truck to leave the
station when a car traveling at five to seven miles per hour approached them. When the two men
realized that the vehicle was not going to stop, they began to start waving and yelling in an attempt
to get the driver to stop. Despite their efforts, the car continued and collided with Faubion's truck
near the gas pump, never having attempted to stop. The collision was minor and the driver did not
hit the gas pump, although she came quite close to doing so. 

 Faubion and Simmons got out of the truck and went over to the vehicle to speak with the
driver. The driver was Carey. Faubion testified that Carey was not upset or shaken by the accident. 
Instead, he testified that she seemed "[v]acant" and had a blank expression on her face. To him,
Carey appeared confused and her speech lacked clarity. Though calm, she was uncooperative as
Faubion tried to discuss identification and insurance information. Faubion noticed Carey's slow
movements and slurred speech as he spoke with her immediately after the collision. 

 Carey remained confused but calm until police arrived five or ten minutes after the collision. 
She then became more animated, more concerned, and louder. She confused Simmons and/or
Faubion, both in working clothes since the two had just come from working on the ranch, for police
officers. "The woman was altered." Faubion testified that he came to court because he was
subpoenaed and indicated that he would not have done so otherwise. He expressed sympathy for
Carey and explained that he had been concerned that she may have had some sort of mental or
emotional condition. 

 Greenville Police Officer Philip Spencer responded to the collision. He explained that as he
asked Carey to locate certain things, she went back and forth to her car looking for those things in
a disorganized manner. Spencer learned that Carey's registration was expired, and Carey could not
produce a current insurance card. When Spencer asked to see her driver's license, she insisted that
she had given it to Faubion. She also insisted that Faubion had identified himself as an officer when
he first approached her vehicle. What initially appeared to Spencer to be a simple fender bender
began to seem more suspicious when Spencer noticed Carey's slow, slurred speech, her disoriented
demeanor, and her uncoordinated movements. Although Spencer did not smell alcohol on her
breath, he did ask Carey if she had been drinking. He also asked if she had any medical conditions
or had taken any medication. She explained that she had a back problem and took Prozac in
treatment of it. Spencer testified that Carey offered an explanation that she had a hard time putting
her gear shifter in park and that sometimes it would move or roll. 

 Nonetheless, based on Spencer's observations of Carey's behavior and speech during the
fifteen or twenty minutes he had been at the scene, Spencer decided to administer standardized field
sobriety tests (FSTs). He explained that FSTs are designed to test a person's mental and physical
capabilities. He testified that the horizontal gaze nystagmus (HGN) test is designed to show alcohol
intoxication. Carey did not demonstrate any signs of alcohol intoxication on the HGN test. Spencer
then asked Carey to perform the walk-and-turn test, a test designed to test mental and physical
faculties without regard to the type of intoxicant. Carey did not perform well on the walk-and-turn
test. She failed to follow directions and also made several missteps in the physical aspect of the test. 
Similarly, on the one-legged-stand test, Carey demonstrated signs of loss of mental and physical
faculties. Based on his observations and Carey's performance on the FSTs, Spencer arrested Carey
for DWI. 

 Spencer testified that he called for a tow truck to remove the vehicle after Carey was arrested
and that the tow driver confirmed that there was a gear shift problem that caused the car to have the
tendency to roll while the driver was trying to find the right gear. Spencer then took Carey to the
hospital for a blood draw to which Carey had consented. Prior to the blood draw, she informed
Spencer and the attending phlebotomist, Lisa Herndon, that, due to a serious medical condition
unrelated to her back problem, she takes approximately twenty different medications in addition to
the Prozac she had already mentioned. 

 Eduardo Padilla, forensic scientist for the Texas Department of Public Safety's (DPS)
toxicology section and the State's expert witness, performed the testing of Carey's blood specimen. 
Padilla explained that when a blood sample arrives with unknown composition, the DPS laboratory
performs an initial screening that tests for six classes of drugs he described as commonly abused. 
This testing revealed the presence of Alprazolam, from the Benzodiazepine class of drugs. Padilla
testified that Alprazolam is often prescribed for anxiety and panic disorders. In addition, further
testing showed the presence of Norpropoxyphene in Carey's blood sample. (1) Norpropoxyphene is a
"mild painkiller." He explained that the DPS laboratory does not test for any and all drugs. 
Specifically, Padilla testified that the DPS laboratory did not test for the presence of Prozac. 

 He testified that both Alprazolam and Norpropoxyphene are central nervous system
depressants and, as such, could have side effects that include drowsiness, dizziness, confusion,
blurred vision, slurred speech, and sluggishness. He explained that both Alprazolam and
Norpropoxyphene are known to cause impairment. He also explained that the level of Alprazolam
in Carey's blood sample was within the therapeutic range. (2) He further testified that there is a
possibility of cumulative effect of more than one central nervous system depressant. According to
Padilla, Alprazolam can be addictive. When asked whether Norpropoxyphene is addictive, he
expressed that he believed it to be. Padilla made clear that these depressants could have impairing
effect even if taken per doctor's orders regarding dosage. He described it as unlikely, however, that
undetectable levels of several drugs would combine to cause impairment.

 Dr. Charles F. King, Carey's witness, (3) testified that he had been treating Carey since
June 2006, eight months after the collision at the gasoline station. He described Carey's several
physical ailments and testified as to the medications which he had prescribed for Carey. He testified
that Carey indicated that she had previously been prescribed Alprazolam. He also testified that he,
too, prescribed Alprazolam for Carey for anxiety. He had not prescribed Norpropoxyphene, but did
not know whether Carey had a prescription at the time of her arrest. He testified that during the eight
office visits he and Carey had, he noticed her deliberate, slow speech and attributed her speech and
other perhaps "quirky and unusual" habits to her anxious, nervous personality. The value of
Dr. King's testimony regarding Carey's medication is limited to what has happened since June 2006
and what Carey told him she had taken prior to the time he began treating her. 

II. APPLICABLE LAW

 Ineffective assistance of counsel claims are evaluated under the two-part test formulated by
the United States Supreme Court in Strickland v. Washington, requiring a showing of both deficient
performance and prejudice. 466 U.S. 668, 689 (1984). A Strickland claim must be "firmly founded
in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. 
Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999).

 Direct appeal is usually an inadequate vehicle for raising such a claim because the record is
generally undeveloped for the object of litigating or preserving the claim and thus often incomplete
or inadequate for this purpose. (4) See Goodspeed, 187 S.W.3d at 392; Freeman v. State, 125 S.W.3d
505, 506 (Tex. Crim. App. 2003); Fuller v. State, 224 S.W.3d 823, 828-29 (Tex. App.--Texarkana
2007, no pet.). This is true with regard to the question of deficient performance--in which counsel's
conduct is reviewed with great deference, without the distorting effects of hindsight--where
counsel's reasons for failing to do something do not appear in the record. Thompson, 9 S.W.3d at
813. The Texas Court of Criminal Appeals has said that "trial counsel should ordinarily be afforded
an opportunity to explain his actions" before a court finds that he rendered ineffective assistance. 
See Goodspeed, 187 S.W.3d at 392 n.14 (quoting Rylander v. State, 101 S.W.3d 107, 111 (Tex.
Crim. App. 2003)); Fox v. State, 175 S.W.3d 475, 485 (Tex. App.--Texarkana 2005, pet. ref'd).

 Absent such an opportunity, an appellate court should not find deficient performance unless
the challenged conduct was "so outrageous that no competent attorney would have engaged in it." 
Goodspeed, 187 S.W.3d at 392 n.15 (quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App.
2001)); Fox, 175 S.W.3d at 486. "[W]hen no reasonable trial strategy could justify the trial counsel's
conduct, counsel's performance falls below an objective standard of reasonableness as a matter of
law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for
acting as she did." Andrews v. State, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). Representation
is not ineffective simply because, in hindsight, the attorney could have or even should have done
something differently. Godwin v. State, 899 S.W.2d 387, 391 (Tex. App.--Houston [14th Dist.]
1995, pet. ref'd). 

 In the absence of direct evidence of counsel's reasons for the challenged conduct, an appellate
court will assume a strategic motivation if any can be imagined. Garcia, 57 S.W.3d at 440; Hankey
v. State, 231 S.W.3d 54, 57 (Tex. App.--Texarkana 2007, no pet.). We begin our analysis of an
ineffective assistance claim with the presumptions that counsel performed competently at trial and
that counsel's decisions were reasonably professional and were motivated by sound trial strategy. 
See Thompson, 9 S.W.3d at 813; Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994);
Hankey, 231 S.W.3d 54. With these standards in mind, we address the litany of alleged errors
committed by defense counsel during trial.

III. DISCUSSION OF CAREY'S CONTENTIONS

 A. Failure to Record Portion of Jury Selection

 Carey complains of trial counsel's failure to object to the court reporter's failure to record the
trial court's discussions with individual veniremembers who may not have been qualified to serve
as a juror or who may have been subject to one of the statutory exemptions. On appeal, she
maintains that the failure to object to the absence of a record prevented appellate counsel and,
"potentially" this Court from reviewing the qualification process. She does not specify the harm that
may have been demonstrated by the record of these portions of the proceedings; she speaks only of
potential error in the qualification process.

 Her position, then, is similar to the one addressed and, ultimately, rejected in Gonzales v.
State, 732 S.W.2d 67, 68 (Tex. App.--Austin 1987, no pet.), and McQueen v. State, 702 S.W.2d
302, 303 (Tex. App.--Houston [1st Dist.] 1985, no pet.). In response to this contention, the Austin
court explained as follows: 

 Initially, appellant complains that his trial counsel failed to request that a record be
made of voir dire. He alleges no specific harm other than "failure to preserve any
possible error." It appears that he is requesting this Court to hold, as a matter of law,
that failure to request the recordation of voir dire in the selection of the jury is
ineffective assistance of counsel. He cites no cases, nor have we located any, that
support the appellant's contention. We refuse to hold that failure to request
recordation of voir dire is per se ineffective assistance of counsel requiring reversal
because harm has not been shown, and an appellate court cannot speculate as to what
may or may not have transpired at trial.


Gonzales, 732 S.W.2d at 68. Appellant must raise on appeal some injury resulting from the failure
to request transcription. See Rivera v. State, 981 S.W.2d 336, 339 (Tex. App.--Houston [14th Dist.]
1998, no pet.); Ybarra v. State, 890 S.W.2d 98, 112 (Tex. App.--San Antonio 1994, pet. ref'd);
Lopez v. State, 838 S.W.2d 758, 760 (Tex. App.--Corpus Christi 1992, no pet.). Here, Carey has
not pointed to any specific harm, nor has she demonstrated the requisite prejudice under Strickland.

 B. Leading Questions

 Carey also complains of trial counsel's failure to object to leading questions asked of State's
witness, Faubion, with whose truck Carey had collided. She also points to trial counsel's failure to
object to leading questions asked of Officer Spencer, phlebotomist Herndon, and toxicologist
Padilla. 

 Leading questions are questions that suggest the desired answer. See Tinlin v. State, 983
S.W.2d 65, 70 (Tex. App.--Fort Worth 1998, pet. ref'd). Rule 611(c) of the Texas Rules of
Evidence provides that leading questions may be used on the direct examination of a witness as
necessary to develop his testimony. Tex. R. Evid. 611(c). Permitting leading questions on direct
examination is a matter within the sound discretion of the trial court. Wyatt v. State, 23 S.W.3d 18,
28 (Tex. Crim. App. 2000). A defendant can show an abuse of discretion only by showing that such
leading questions were unduly prejudicial. See id.; Hernandez v. State, 643 S.W.2d 397, 400 (Tex.
Crim. App. 1982).

 Assuming without deciding that each of the several instances to which Carey refers are
instances of improperly leading a witness, we, nevertheless, recognize that trial counsel may have
had a reasonable, strategic decision for not objecting to those questions. We have recognized such
a strategy in response to a similar contention of ineffective assistance of counsel: "[T]rial counsel
may elect to refrain from objecting to an improper question to avoid calling attention to damaging
evidence that is otherwise admissible or merely cumulative." Young v. State, 10 S.W.3d 705, 713
(Tex. App.--Texarkana 1999, pet. ref'd). (5) In Young, we acknowledged that unless the witness is
determined to be a hostile witness, an adverse party, or a witness identified with an adverse party,
counsel should not ask leading questions on direct examination except to develop testimony. See
id. at 713 n.29 (citing Tex. R. Evid. 611(c)). Despite this rule, however, we concluded that "it is
sound trial strategy for opposing counsel to choose not to object to leading questions when the
evidence will come in anyway." Id. at 713.

 Here, again, there is a strong presumption that trial counsel performed within the wide range
of reasonably professional assistance. See id. There is also a presumption that trial counsel's
conduct was based on a reasonable trial strategy. Strickland, 466 U.S. at 689. Because the record
provides no evidence to explain why trial counsel failed to object to the State's leading of its
witnesses, Carey has failed to rebut the presumption that trial counsel's conduct was a reasonable
trial strategy. We, therefore, conclude that she has not made the required showing that trial counsel
committed error by failing to object to the State's leading questions.

 C. Predicate for Admission

 Carey complains of trial counsel's failure to object to the lack of proper predicate for
admission of the audio portion of State's Exhibit 6, a videotape of the incident recorded by Officer
Spencer upon his arrival at the scene of the accident. Carey complains that admission of the tape
was harmful in that it showed to the jury Carey's slurred speech, confusion, and inconsistent
statements.

 In order to show ineffectiveness in failing to object, Carey must demonstrate that if counsel
had objected on the indicated grounds, the trial court would have erred in overruling the objection. 
See Vaughn v. State, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). Rule 901 of the Texas Rules
of Evidence governs the authentication and admissibility of electronic recording evidence and
provides that "[t]he requirement of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the matter in question is
what its proponent claims." Tex. R. Evid. 901(a); Leos v. State, 883 S.W.2d 209, 211 (Tex. Crim.
App. 1994). Subsection (b) provides a nonexclusive list of methods to authenticate evidence. Tex.
R. Evid. 901(b). One example given is the testimony of a witness with knowledge that a matter is
what it is claimed to be. Tex. R. Evid. 901(b)(1). Another is "[i]dentification of a voice, whether
heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon
hearing the voice at anytime under circumstances connecting it with the alleged speaker." Tex. R.
Evid. 901(b)(5); Thornton v. State, 994 S.W.2d 845, 855 (Tex. App.--Fort Worth 1999, pet. ref'd).

 Here, Officer Spencer testified that State's Exhibit 6 was a copy of his "in-car" videotape that
he made on the day of the collision. When asked whether "the video and the audio . . . fairly and
accurately reflect[s] or capture[s] the events as they happened on November the 5th, 2005," Spencer
answered, "Yes." Based on such testimony, the trial court would not have abused its discretion by
overruling an objection based on Rule 901. Without showing that the trial court would have abused
its discretion by overruling an objection, Carey cannot establish that the trial counsel's failure to
lodge such an objection amounted to ineffective assistance of counsel.

 D. Hearsay

 Carey contends that trial counsel was ineffective by failing to object to Officer Spencer's
hearsay testimony regarding Faubion's statements at the accident scene. More specifically, she
complains of the officer's testimony regarding Faubion's statement at the scene concerning the
whereabouts of Carey's license. 

 We begin by noting that the failure to object to inadmissible evidence does not necessarily
constitute ineffective assistance. See Greene v. State, 928 S.W.2d 119, 123 (Tex. App.--San
Antonio 1996, no pet.). The testimony of which Carey complains mirrors Faubion's own testimony
given earlier in the proceeding. So, assuming that the statements in question do constitute
inadmissible hearsay, trial counsel may have decided to forego an objection since the jury had
already heard Faubion's testimony. Counsel may have considered that an objection to this arguable
hearsay, the substance of which had already been put before the jury, would be futile or serve only
to emphasize the testimony. Since the record does not demonstrate trial counsel's reasoning in not
objecting to this testimony, we presume that counsel made the decision based on a reasonable trial
strategy. 

 E. Scope of Testimony

 Carey further complains of the trial counsel's failure to object to the State's questions directed
at DPS forensic toxicologist Padilla concerning the addictiveness and side effects of certain
prescription medication and the purposes for which those medications are commonly prescribed. 
It is unclear the precise basis on which Carey contends this testimony was objectionable. We read
her contention as one which asserts that Padilla's testimony fell outside the permissible scope of his
expertise under Rule 702 of the Texas Rules of Evidence. See Tex. R. Evid. 702.

 First, we observe that testimony as to the effects and intended use of medications would
likely fall within the scope of the toxicology field. We observe that Dorland's Illustrated
Medical Dictionary 1926 (30th ed. 2003) defines toxicology as being "the sum of what is known
regarding poisons; the scientific study of poisons, their actions, their detection, and the treatment of
the conditions produced by them." We find nothing to suggest that Padilla was not qualified to
testify on the therapeutic levels of the medication at issue. To the contrary, the subject appears to
be well within his profession. As such, the trial court would not have abused its discretion by
overruling an objection to his testimony had trial counsel lodged one. Again, without a showing to
that effect, Carey cannot prevail in an attempt to demonstrate this as being an example of ineffective
assistance of counsel.

 Further, advocates must be free to choose to not make objections even if they have a legal
basis for doing so. McKinny v. State, 76 S.W.3d 463, 473 (Tex. App.--Houston [1st Dist.] 2002,
no pet.). Here, trial counsel was faced with explaining and/or minimizing the laboratory results that
showed the presence of two prescription medications that are generally accepted as addictive and
impairing. We observe from trial counsel's cross-examination of Padilla that her strategy appears
to have been to point out that the presence of Alprazolam in Carey's system was within the
therapeutic range and that the quantity of the drug present in the blood did not necessarily mean a
person is impaired. It appears that trial counsel emphasized that the level was within the therapeutic
range and that--at even toward the higher end of the therapeutic range--a person may or may not
be impaired. From Padilla's testimony, trial counsel also developed evidence that the quantity of a
medication present in a sample does not go to the issue of whether a person is abusing the
prescription drug. Padilla's testimony also provided Carey with additional evidence that the
medication does have a medical purpose. A legitimate trial strategy is to minimize the damaging
evidence against Carey. Allowing or even eliciting Padilla's testimony as to the effects and
therapeutic levels of Alprazolam may have been part of such a strategy.

 F. Requests for Instructions to Disregard

 Carey also complains of trial counsel's failure to request an instruction to the jury to
disregard inappropriate testimony elicited by the State after defense counsel successfully objected
to the questioning. We note that promptness of trial counsel's objections prevented the witness from
answering the challenged question. Therefore, it could be said that there was no evidence that the
jury had to disregard. See Bass v. State, 713 S.W.2d 782, 785 (Tex. App.--Houston [14th Dist.]
1986, no pet.) (suggesting that the fact that the witness never answered the objected-to question
rendered any error harmless).

 Going further, the trial court instructed the jury generally: "You must not concern yourself
with any testimony or exhibits to which an objection was sustained or that I instruct you to
disregard." On appeal, we generally presume the jury follows the trial court's instructions in the
manner presented. Thrift v. State, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); Reynolds v. State,
227 S.W.3d 355, 367 (Tex. App.--Texarkana 2007, no pet.).

 In one instance, the State asked Dr. King whether the two drugs present in Carey's system
were "commonly abused drugs," to which Dr. King answered, "Yes." Immediately following the
objection, trial counsel asked to approach the bench, and after a discussion off the record, the trial
court sustained trial counsel's objection. Trial counsel did not request an instruction to disregard. 
In this instance, Dr. King's answer did get before the jury, and trial counsel did not request an
instruction to disregard following her successful objection. We do not know the precise basis of her
objection, nor do we know the substance of the bench conference. Nevertheless, assuming that trial
counsel erroneously failed to request an instruction to disregard, we conclude that an isolated failure
to request an instruction to disregard, in this context, would not constitute ineffective assistance of
counsel.

 G. Jury Charge

 Carey also directs us to trial counsel's failure to object to the jury charge. The jury charge
included the statutory definition of "intoxication" as (A) not having the normal use of mental or
physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a
dangerous drug, a combination of two or more of those substances, or any other substance into the
body; or (B) having an alcohol concentration of 0.08 or more. See Tex. Penal Code Ann. § 49.01
(Vernon 2003). Of course, the evidence was clear that Carey was not intoxicated due to alcohol
consumption. In fact, Officer Spencer indicated that he did not smell alcohol on Carey and that her
performance on the HGN test did not indicate alcohol intoxication. 

 We note that the jury charge tracks the statutory definition of intoxication. See Tex. Penal
Code Ann. § 49.01. When a defendant in the reverse situation of Carey directly challenged the jury
charge language relating to "other intoxicants" and when there was no evidence of any other
intoxicant other than alcohol, the Corpus Christi court rejected such a contention. Benn v. State, 110
S.W.3d 645, 648 (Tex. App.--Corpus Christi 2003, no pet.). Benn, like Carey, argued that use of
the statutory definition authorized the jury to convict him for something never proven. Id. at 649. 
The court concluded that use of the statutory definition was not error. Id.; see also Martinez v. State,
924 S.W.2d 693, 699 (Tex. Crim. App. 1996) ("Following the law as it is set out by the Texas
Legislature will not be deemed error on the part of the trial judge."). The court added that the record
demonstrated "the complete absence of harm." Benn, 110 S.W.3d at 649. Benn relied a great deal
on Erickson v. State, 13 S.W.3d 850 (Tex. App.--Austin 2000, pet. ref'd). In Erickson, the
definition of intoxication included in the jury charge "roughly conform[ed]" to the statutory
definition. Id. at 851. Erickson argued that the definition, when viewed in conjunction with the
application paragraph, authorized conviction on a theory not supported by evidence. Id. In rejecting
his contention, the Austin court emphasized that the State never suggested intoxication by any
substance other than alcohol; evidence and jury argument from both sides made clear that only
alcohol intoxication was at issue. Id. at 852.

 On similar reasoning, we cannot conclude that trial counsel was ineffective for failing to
object to the use of the statutory definition in the jury charge. See Parker v. State, 119 S.W.3d 350,
357 (Tex. App.--Waco 2003, pet. ref'd) (concluding that when jury charge was not erroneous, trial
counsel was not ineffective for failing to object to it).

 H. Trial Court's Comment

 After Dr. King's testimony, the trial court called for a brief recess, after which the following
exchange took place:

 THE COURT: You may be seated. I said 1:45, right? Isn't that what I said? 
I think we said 1:45, so we're right on time this afternoon.

 Ms. Blacknall, are you ready to call your next witness?


 [Counsel for Carey]: Yes, Your Honor. At this time the defense rests.


 THE COURT: All right. Mr. Dailey, anything in rebuttal from the State?


 [Counsel for the State]: The State closes.


 THE COURT: Defense closes?


 [Counsel for Carey]: Yes, Your Honor.


 THE COURT: All right. Ladies and gentlemen of the jury, that was
unexpected for the Court. Give me one second to get back in our place.

 Ladies and gentlemen of the jury, at this time, all of the evidence is now
before you in this case. However, you have not yet been given the law and the
Court's charge, and you have not yet heard closing argument from each side. We're
going to take a brief recess at this time. I know it seems odd that we just brought you
out, but we had to bring you out so both sides could rest and close on the record and
in the presence of the jury.


Carey now points to trial counsel's failure to object to the trial court's "unexpected" comment as
ineffective assistance, characterizing the trial court's statement as an improper comment on the
weight of the evidence. We look first to the Texas Code of Criminal Procedure:

 In ruling upon the admissibility of evidence, the judge shall not discuss or comment
upon the weight of the same or its bearing in the case, but shall simply decide
whether or not it is admissible; nor shall he, at any stage of the proceeding previous
to the return of the verdict, make any remark calculated to convey to the jury his
opinion of the case.

Tex. Code Crim. Proc. Ann. art. 38.05 (Vernon 1979). A trial court improperly comments on the
weight of the evidence if it makes a statement that implies approval of the State's argument, that
indicates any disbelief in the defense's position, or that diminishes the credibility of the defense's
approach to its case. Hoang v. State, 997 S.W.2d 678, 681 (Tex. App.--Texarkana 1999, no pet.). 
It is well established that comments on the evidence or other remarks by the trial court constitute
reversible error only if they are reasonably calculated to benefit the State or prejudice the defendant's
rights. Davis v. State, 651 S.W.2d 787, 789 (Tex. Crim. App. 1983). 

 To illustrate, we find it helpful to view the trial court's comment in light of remarks found
to have run afoul of the above-referenced principles. For instance, in Blue v. State, 41 S.W.3d 129,
130 (Tex. Crim. App. 2000), the trial court told the jury panel as voir dire began that the delay it had
experienced was the result of ongoing plea negotiations; that the defendant "has been back and forth
so I finally told him I had enough of that, we are going to trial"; and that "I prefer the defendant to
plead because it gives us more time to get things done . . . . We were all trying to work toward that
and save you time and cost of time, which you have been sitting here and I apologize about that." 
The court concluded that comments of the trial court tainted Blue's presumption of innocence in front
of the venire. Id. at 132.

 The trial court's remark "[y]ou can try that on appeal," was of considerable concern to the
court in Hernandez v. State, 507 S.W.2d 209, 211 (Tex. Crim. App. 1974). The court concluded that
the remark carried "the implication that appellant's conviction was a foregone conclusion in the eyes
of the court." Id. Although the court ultimately concluded that the trial court's instruction to the jury
that the authority to find defendant guilty rested solely with the jury cured the error, the court's
treatment of the remark indicates that the comment from the bench was improper. See id. at 211-12. 
Here, Carey contends the trial court's comment that the end of the case had come about unexpectedly
necessarily conveyed to the jury the trial court's opinion of the case: "This remark indicated to the
jury that the trial court was surprised that the defense was already resting its case and thus
convey[ed] that if that's all the Appellant had for the jury, her conviction was a foregone conclusion." 
We do not read the comment as such. A reasonable reading of the trial court's comment in its
context demonstrates that the trial court had simply expected the trial to continue into the afternoon. 
It was not a clear comment on the quality of Carey's case. It appears that the trial court was
concerned with maintaining its schedule and the unexpected comment seems to go only to that
scheduling concern. Any other meaning is too far attenuated for it to fall within Article 38.05's
prohibition against comments from the bench on the weight of the evidence. The remark from the
bench did not constitute an improper comment on the evidence, and thus, trial counsel's failure to
object to it does not constitute error. See Resendez v. State, 160 S.W.3d 181, 190 (Tex.
App.--Corpus Christi 2005, no pet.). 

IV. CONCLUSION

 Since there was no record developed for the purpose of evaluating an ineffective assistance
claim, we are required to give a great deal of deference to trial counsel's reasoning for the decisions
made during trial. The record before us does not demonstrate that Carey's trial counsel rendered
ineffective assistance. 

 We overrule Carey's contentions and affirm the trial court's judgment.



 Bailey C. Moseley

 Justice


Date Submitted: October 18, 2007

Date Decided: November 16, 2007


Do Not Publish


1. Padilla testified that the DPS laboratory does not test quantity of Norpropoxyphene in the
blood. He simply testified that the drug was present in Carey's blood. 
2. Specifically, the level of Alprazolam in Carey's blood was 0.087 milligrams per liter. The
therapeutic range is 0.02 to 0.10 milligrams per liter, and a person may or may not experience
impairing side effects at the low end of the therapeutic range. Padilla agreed that Carey's level was
at the high end of the therapeutic range, but was careful to add that the level of impairment at that
0.087 level would depend on the person. 
3. The trial court did not permit Dr. King to testify as an expert because of Carey's untimely
notice to the State designating Dr. King as an expert witness. 
4. A claim of ineffective assistance is better pursued by way of habeas corpus, with which there
is some opportunity for the record to have been developed regarding trial counsel's reasons for his
actions. See Goodspeed, 187 S.W.3d 390; Bone v. State, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App.
2002).
5. Sister courts have acknowledged similar strategies. See Velasquez v. State, 941 S.W.2d 303,
310 (Tex. App.--Corpus Christi 1997, pet. ref'd) (stating that "we are mindful that it may actually
be good trial strategy to avoid objecting to inconsequential testimony so as to avoid antagonizing the
jury with frequent objections"); Ruiz v. State, 726 S.W.2d 587, 591 (Tex. App.--Houston [14th
Dist.] 1987), overruled on other grounds, 761 S.W.2d 4 (Tex. Crim. App. 1988) (recognizing that
"[m]aking many objections to leading questions would only tend to inflame the minds of the jury by
appearing to be antagonizing and unnecessarily prolonging the trial"); Henderson v. State, 704
S.W.2d 536, 538 (Tex. App.--Houston [14th Dist.] 1986, pet. ref'd) (concluding that "[f]ailing to
object to every introduction of improper evidence or questioning does not indicate that appellant's
representation was ineffective. Not objecting can be a trial strategy." (Citations omitted.)).