

# NUMBERS 13-18-00343-CR & 13-18-00344-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JACKIE LEE GANDEE JR.,                                              Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

### On appeal from the County Court
### of Matagorda County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Hinojosa
### Memorandum Opinion by Justice Hinojosa

Appellant Jackie Lee Gandee Jr. appeals his convictions, following a jury trial, for driving while intoxicated (DWI) with a breath alcohol concentration level of 0.15 or more, *see* TEX. PENAL CODE ANN. § 49.04(d), and unlawful carrying of a weapon, *see id*. § 46.02,

each a Class A misdemeanor.[1]  For both counts, the jury assessed punishment at sixty days in the county jail and recommended that the sentences be probated for twelve months.  The trial court sentenced Gandee accordingly and ordered the sentences to run concurrently.  In four issues, Gandee argues that:  (1 and 2) there is legally insufficient evidence that he committed either of the charged offenses; (3) the jury charge was erroneous; and (4) his trial counsel was ineffective.  We affirm.

## I.  BACKGROUND

The State charged Gandee by information with operating a motor vehicle in a public place while intoxicated by reason of the introduction of alcohol, a controlled substance, a drug, or a dangerous drug into the body, and having an alcohol concentration level of 0.15[2] or more when a breath analysis was performed.  *See id*. § 49.04.  By separate information, the State alleged that Gandee intentionally and knowingly carried on or about his person a handgun while Gandee was engaged in criminal activity.  *See id*. § 46.02.

The State's sole witness at trial was Brian Robbins, a Texas Department of Public Safety State Trooper.  Officer Robbins testified that he was dispatched to the site of a one-vehicle accident on FM 1862 in Matagorda County, Texas.  Upon arrival, he observed a vehicle that had left the roadway before striking a culvert and a private fence.

---

[1] The DWI offense (trial court cause no. 2018-0019) and the weapon offense (trial court cause no. 2018-0020) were prosecuted in a single trial.  Gandee appeals his DWI conviction in appellate cause number 13-18-00343-CR and his unlawful carrying of a weapon conviction in appellate cause number 13-18-00344-CR.  For the sake of judicial economy, we will consider both appeals in this consolidated memorandum opinion.

[2] As pertinent here, "alcohol concentration" means the number of grams of alcohol per 210 liters of breath.  TEX. PENAL CODE ANN. § 49.01(1)(A).

Officer Robbins approached the vehicle's driver, whom he identified as Gandee, and immediately noticed "a very strong smell of an alcoholic beverage on him." Gandee told Officer Robbins that his service dog jumped onto his lap while he was driving, which caused him to swerve and leave the roadway. When asked about his alcohol consumption, Gandee admitted to having two shots of Fireball Whiskey earlier that day. Officer Robbins then administered standardized field sobriety tests. He first administered the horizontal gaze nystagmus test which yielded six out of six clues for intoxication. Officer Robbins did not conduct the walk-and-turn or one-leg-stand tests because Gandee indicated that he was physically unable to perform the tests. He observed Gandee standing "very unbalanced" and "uneasy on his feet." At that point, Officer Robbins determined that Gandee was intoxicated.

Officer Robbins arrested Gandee for DWI and placed him in the front seat of his patrol car. He then conducted an inventory of Gandee's vehicle and discovered a loaded handgun engraved with Gandee's name behind the front seat. The trial court admitted the handgun into evidence, which Officer Robbins identified as a 9-millimenter pistol.

A Matagorda County Sheriff's deputy transported Gandee to the county jail, where Officer Robbins twice administered a breathalyzer test showing alcohol concentration levels of 0.164 and 0.165, which is more than twice the legal limit. *See id*. § 49.01(2)(B). The trial court admitted a dash-cam video recording of Officer Robbins's DWI investigation at the accident site, which was published to the jury.

Gandee testified in his defense. He explained that he was visiting family in Houston on the date in question for a Christmas gift exchange. It was during this event

3

that he received the pistol found in his vehicle. While Gandee was travelling, he stated that there was a "blow-out or something broke under the truck" which scared his service dog, causing her to jump on Gandee. As a result, Gandee lost control of his vehicle, which left the roadway into a ditch. Gandee attempted to drive his truck back onto the road, but he was unsuccessful. He then called his father and requested that he bring a flatbed truck. While he was waiting, "big oil field equipment, three or four trucks went by," which scared him. Gandee testified that he had post-traumatic stress disorder from an incident that occurred when he was in the Navy. He called his wife who advised him to drink the Fireball Whiskey that he had in his back seat. Gandee said he "gulped it in two drinks." He denied drinking any alcohol prior to driving. Gandee claimed he was confused when talking to Officer Robbins because he had stopped taking his Cymbalta medication.

The jury returned a guilty verdict. This appeal followed.

## II.    LEGAL SUFFICIENCY

By his first two issues, Gandee argues that the evidence is legally insufficient to support both of his convictions.[3]

### A.    Standard of Review

The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution requires that a criminal conviction be supported by a rational trier of

---

[3] Gandee also argues that the evidence was factually insufficient to support his convictions. We note that the Texas Court of Criminal Appeals has abolished factual-sufficiency review for criminal cases. *See Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010) (plurality op.). Therefore, we will only address appellant's challenges to the legal sufficiency of the evidence. *See id.*; *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd).

fact's findings that the accused is guilty of every essential element of a crime beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (citing *Jackson v. Virginia*, 443 U.S. 307, 316 (1979)). This due process guarantee is safeguarded when a court reviews the legal sufficiency of the evidence. *Id*. To determine whether the evidence is legally sufficient, we consider all of the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Jackson*, 443 U.S. at 319; *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). Because the jury is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony, we resolve any conflicts or inconsistencies in the evidence in favor of the verdict. *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc).

We measure the legal sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Id*.

## B.     DWI – Alcohol Concentration of 0.15 or More

By his first issue, Gandee challenges the legal sufficiency of the evidence supporting his conviction for DWI with an alcohol concentration level of 0.15 or more.

### 1. Applicable Law

A person commits a Class B misdemeanor DWI if the person is intoxicated while operating a motor vehicle in a public place.  TEX. PENAL CODE ANN. § 49.04(a), (b).  As pertinent here, "intoxicated" means either "not having the normal use of mental or physical faculties" by reason of "the introduction of alcohol" or "any other substance" into the body, or "having an alcohol concentration of 0.08 or more."  *Id*. § 49.01(2)(A), (B).  A Class A misdemeanor DWI offense requires additional proof that the defendant had an alcohol concentration level of at least 0.15 at the time the analysis was performed.  *Id*. § 49.04(d).  The State, however, is not required to prove an alcohol concentration level of 0.15 at the time of the commission of the offense.  *Ramjattansingh v. State*, 548 S.W.3d 540, 548 (Tex. Crim. App. 2018).  Accordingly, the hypothetically correct jury charge for a Class A misdemeanor DWI offense requires proof of:  (1) Class B misdemeanor DWI; and (2) an alcohol concentration level of 0.15 or more at the time the analysis was performed.  *Id*.

### 2. Analysis

Gandee first argues that there is no evidence establishing his alcohol concentration level at the time the accident occurred.  This argument rests on the premise that the State was required to prove that his alcohol concentration level was 0.15 or more at the time of the accident, an argument expressly rejected by the Texas Court of Criminal Appeals in *Ramjattansingh*.  *See id*.  Here, the State presented evidence of Gandee's alcohol concentration level at the time the test was administered at the jail.  This evidence was sufficient to establish the aggravating element for a Class A misdemeanor DWI.  *See id*.

6

Next, Gandee argues that "[t]here was legally . . . insufficient evidence in this case to prove, beyond a reasonable doubt, that Gandee was <u>driving</u> while he was intoxicated" (emphasis in Gandee's brief). Gandee's argument in this regard emphasizes his own testimony that he did not drink alcohol until after the accident. However, our standard of review requires that we resolve any conflicts or inconsistencies in the evidence in favor of the verdict. *See Ramsey*, 473 S.W.3d at 808; *Wesbrook*, 29 S.W.3d at 111. In that regard, we presume that the jury, as the sole judge of the credibility of the witnesses, determined that Gandee's trial testimony was not credible and relied on Gandee's admission to Officer Robbins that he consumed alcohol prior to the accident in reaching its verdict. We further conclude that a rational fact finder could have found beyond a reasonable doubt that Gandee was intoxicated at the time of the accident based on the following factors: Gandee's vehicle left the roadway; he smelled strongly of alcohol; his balance was unsteady, he failed the field sobriety tests, and he admitted to drinking alcohol prior to driving. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (recognizing that evidence raising an inference of intoxication includes erratic driving as well as post-driving behavior such as stumbling, swaying, slurring or mumbling words, and bloodshot eyes); *Cotton v. State*, 686 S.W.2d 140, 142–43 & 142 n. 3 (Tex. Crim. App. 1985) (identifying characteristics that may constitute evidence of intoxication to include slurred speech, bloodshot eyes, unsteady balance, staggering gait, and the odor of alcohol on the person or his breath).

We conclude that Gandee's DWI conviction is supported by legally sufficient evidence. *See Jackson*, 443 U.S. at 319 (1979); *Whatley*, 445 S.W.3d at 166. We

7

overrule Gandee's first issue.

**C.      Unlawful Carrying of a Weapon**

By his second issue, Gandee challenges the legal sufficiency of the evidence supporting his conviction for unlawful carrying of a weapon.

**1.      Applicable Law**

As charged in the information, a hypothetically correct jury charge would require the State to prove:   (1) appellant; (2) intentionally and knowingly; (3) carried on or about his person; (4) a handgun; (5) in a motor vehicle; (6) appellant owned or controlled; (7) while engaged in the criminal activity of DWI.   *See* Tex. Penal Code Ann. § 46.02(a-1)(2)(A).

**2.      Analysis**

Gandee first argues that he was not engaged in criminal activity as that phrase is contemplated by § 46.02 of the penal code.   He maintains that the statute requires a violation of a law or ordinance regulating traffic, and that driving while intoxicated is not such an offense.   We disagree.

Section 46.02 provides that a person commits an offense if he intentionally, knowingly, or recklessly carries a handgun on or about his person in a motor vehicle while that person is "engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic or boating."   *Id*. § 46.02(a-1)(2)(A). Gandee's reading of the statute omits pertinent language.   Reading the statute in its entirety, its plain language provides that an offense occurs if a person is engaged in criminal activity, excepting only Class C misdemeanor violations of a traffic or boating law

or ordinance.   *See Getts v. State*, 155 S.W.3d 153, 155 (Tex. Crim. App. 2005) ("When discerning the meaning of a statute, we begin with its plain language.").   Gandee's DWI offense does not fall within the exception—instead, it is a Class A misdemeanor which is classified as an offense against public health, safety, and morals.   *See* TEX. PENAL CODE ANN. tit. 10 ("Offenses Against Public Health, Safety, and Morals").   Gandee provides us with no authority, and we find none, indicating that the term "criminal activity" as used in this statute is otherwise limited to violations of laws or ordinances regulating traffic.

Next, Gandee argues that the State did not prove by legally sufficient evidence that he was carrying the handgun on or about his person.   *See id*. § 46.02(a)(1).   The phrase "on or about the person" has been construed to mean "nearby, close at hand" and within such distance of the accused that he can reach it without materially changing his position.   *Courtney v. State*, 424 S.W.2d 440 (Tex. Crim. App. 1968); *Wagner v. State*, 80 Tex. Crim. 66, 188 S.W. 1001, 1002 (1916); *Burks v. State*, 693 S.W.2d 747, 751 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd).   The Texas Court of Criminal Appeals has long recognized that "on or about" a person includes the interior of the vehicle occupied by the person.   *See Christian v. State*, 686 S.W.2d 930, 933 (Tex. Crim. App. 1985) (under the driver's seat); *Hazel v. State*, 534 S.W.2d 698, 700 (Tex. Crim. App. 1976) (on the floorboard); *O'Leary v. State*, 494 S.W.2d 841, 842 (Tex. Crim. App. 1973) (on a "shelf" behind the driver's seat); *Courtney*, 424 S.W.2d at 441 (in the glove compartment); *see also Hendricks v. State*, 05-01-00323-CR, 2002 WL 1981361, at *1 (Tex. App.— Dallas Aug. 29, 2002, pet. ref'd) (mem. op., not designated for publication) (handgun located "beneath a flap of carpet behind the passenger seat" was on or about appellant's

person); *Contreras v. State*, 853 S.W.2d 694, 696 (Tex. App.—Houston [1st Dist.] 1993, no pet.) ("[C]arrying on or about the person include[s] weapons present on or within one's personal means of transportation."); *Freeman v. State*, 864 S.W.2d 757, 759 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (holding that there was legally sufficient evidence that handgun was on or about appellant's person where it was located in a briefcase behind the driver's seat); *Turner v. State*, 744 S.W.2d 318, 319 (Tex. App.—Dallas 1988, pet. ref'd) (explaining that "[a] weapon in a vehicle where the defendant is the only person in the vehicle at the time, has repeatedly been held sufficient to prove an appellant was carrying a gun 'on or about his body'"); *Demetriou v. State*, B14-87-00035-CR, 1988 WL 81738, at *4 (Tex. App.—Houston [14th Dist.] Aug. 4, 1988, pet. ref'd) (op., not designated for publication) (gun found under the passenger seat was on or about appellant's person).

Here, Officer Robbins testified that the handgun was found behind the front seat of Gandee's vehicle. Gandee described his vehicle as a truck with a bench seat. Considering this evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt that Gandee was carrying the weapon on or about his person. *See Jackson*, 443 U.S. at 319; *Whatley*, 445 S.W.3d at 166. Having rejected Gandee's arguments, we overrule his second issue.[4]

---

[4] Gandee also complains that the information contains a reference to the penal code which does not identify any illegal activity. The reference Gandee complains of is a citation to the subsection of the statute identifying the offense charged as a Class A misdemeanor. To the extent that this argument can be construed as a challenge to the adequacy of the information, we note that Gandee did not preserve error by raising the issue in the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b); *Jacobsen v. State*, 325 S.W.3d 733, 740 (Tex. App.—Austin 2010, no pet.) ("A defendant may not complain on appeal of any defect, error, or irregularity of form or substance in an indictment or information if he did not object to the defect, error, or irregularity before trial."). Even if Gandee had preserved the issue, we would conclude that the language in the information was "clear enough that one can identify the offense alleged." *Teal v.*

10

### III.   JURY CHARGE

By his third issue, Gandee argues that the jury charge "did not properly inform the jury of its available options" related to the lesser-included offense of Class B Misdemeanor DWI.[5]

### A.   Standard of Review and Applicable Law

The purpose of the trial court's jury charge is to instruct the jurors on the law applicable to the case.   *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012); *see* Tex. Code Crim. Proc. Ann. art. 36.14.   The application paragraph is the portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment or information allegations.   *Vasquez*, 389 S.W.3d at 366.   Therefore, a jury charge with an application paragraph that incorrectly applies the pertinent penal law to the facts of a given case is erroneous.   *Cortez*, 469 S.W.3d at 598; *see Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004).

Appellant did not object to the jury charge in this case.   Therefore, we may only reverse appellant's convictions if the charge error resulted in "egregious harm."   *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).   "Harm is egregious if it deprives the appellant of a fair and impartial trial."   *Id*.; *see Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008) ("[J]ury charge error is egregiously harmful if it affects the very basis of

---

*State*, 230 S.W.3d 172, 180 (Tex. Crim. App. 2007).

[5] Gandee also argues that the evidence did not support the submission of the unlawful carrying of a weapon charge to the jury.   We have previously concluded that Gandee's conviction for this offense was supported by legally sufficient evidence.   Therefore, this argument necessarily fails.

the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."").

Applying the egregious harm test requires considering (1) the jury charge, (2) the state of the evidence, (3) the parties' arguments, and (4) all other relevant information in the record.   *See Allen*, 253 S.W.3d at 264.

**B.    Analysis**

The application portion of the charge provided the following instruction for Class A Misdemeanor DWI:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 28TH day of NOVEMBER, 2017 in Matagorda County, Texas, the defendant, JACKIE LEE GANDEE, JR., DID THEN AND THERE OPERATE A MOTOR VEHICLE IN A PUBLIC PLACE WHILE SAID DEFENDANT WAS INTOXICATED BY REASON OF THE INTRODUCTION OF ALCOHOL, A CONTROLLED SUBSTANCE, A DRUG, OR A DANGEROUS DRUG INTO THE BODY AND THAT AT THE TIME OF PERFORMING AN ANALYSIS OF A SPECIMEN OF THE DEFENDANT'S BREATH, THE ANALYSIS SHOWED AN ALCOHOL CONCENTRATION LEVEL OF 0.15 OR MORE, then you will find the defendant guilty of DRIVING WHILE INTOXICATED WITH A BREATH ALCOHOL CONCENTRATION OF .15 OR HIGHER as charged in the information.
>
> Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

The jury charge then instructed the jury as follows regarding the lesser-included offense of a Class B Misdemeanor DWI:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 28TH day of NOVEMBER, 2017 in Matagorda County, Texas, the defendant, JACKIE LEE GANDEE, JR., DID THEN AND THERE OPERATE A MOTOR VEHICLE IN A PUBLIC PLACE WHILE SAID DEFENDANT WAS INTOXICATED BY REASON OF THE INTRODUCTION OF ALCOHOL, A CONTROLLED SUBSTANCE, A DRUG, OR A DANGEROUS DRUG INTO THE BODY, *but you further find, or you have a reasonable doubt thereof, if the breath analysis showed an alcohol concentration of 0.15 or more, as charged In the information, then you will*

12

*find the defendant guilty of the lesser-included offense of DRIVING WHILE INTOXICATED.*

*Unless you so find beyond a reasonable doubt, or If you have a reasonable doubt thereof, you will find the defendant not guilty.*

(Emphasis added).

Gandee complains that the emphasized language permitted the jury to find Gandee guilty of the lesser-included DWI offense under two scenarios: (1) if it found that the State had proven beyond a reasonable doubt the elements of the lesser-included offense and that Gandee's alcohol concentration level was 0.15 or more; or (2) if it found that the State had proven beyond a reasonable doubt the elements of the lesser-included offense, but it had reasonable doubt that Gandee's alcohol concentration level was 0.15 or more. We agree that the instruction is erroneous for the reasons noted by Gandee. However, we are unable to conclude that the error egregiously harmed Gandee. As phrased, the instruction permitted the jury to find Gandee guilty of the lesser-included offense whether or not it believed that the State had proven beyond a reasonable that his alcohol concentration level was 0.15 or more. In other words, the charge permitted the jury to find Gandee guilty of the lesser-included offense even if it found that the State proved each element of the greater offense beyond a reasonable doubt. Accordingly, the error could only serve to benefit Gandee.

Furthermore, we note that any confusion the jury may have had about the instruction was mitigated when the trial court provided the following response to the jury's request to define the lesser-included DWI offense: "An offense is a lesser included offense if all the elements of the charged offense (BAC > .15) are proven except the

13

breath alcohol content level is less than .15." The trial court's response properly limited the jury's consideration of the lesser-included offense to instances in which it had reasonable doubt regarding only the aggravating element.

We also note that Gandee did not dispute the accuracy of the breathalyzer test at trial. Rather, Gandee's defense was that he became intoxicated after the accident. Had the jury found this defense credible, it would have acquitted him of all charges regardless of what his alcohol concentration level was following the accident.

Having reviewed the jury charge, the state of the evidence, the parties' arguments, and all other relevant information in the record, we conclude that Gandee was not egregiously harmed by the jury charge error. *See Allen*, 253 S.W.3d at 264. We overrule Gandee's third issue.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his fourth issue, Gandee argues that his trial counsel was ineffective.

## A. Standard of Review and Applicable Law

The right to counsel afforded by the United States and Texas Constitutions requires more than the presence of a lawyer; "it necessarily requires the right to effective assistance." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see* U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. To prevail on an ineffective assistance claim, appellant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez*, 343 S.W.3d at 142. "Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be

14

ineffective." *Lopez*, 343 S.W.3d at 142. To satisfy the first prong, appellant must prove by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

"In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id*.; *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("Any allegation of ineffectiveness must be firmly rooted in the record[.]"). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When direct evidence is unavailable, we will assume counsel had a strategy "if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143.

Although an appellant may claim ineffective assistance of counsel for the first time on direct appeal, the record will often be insufficient to overcome the presumption that counsel's conduct was reasonable and professional. *Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008); *Washington v. State*, 417 S.W.3d 713, 724 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Where there is no proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show trial counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex.

Crim. App. 2002). Under this procedural posture, we will not find deficient performance unless counsel's conduct is so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Washington*, 417 S.W.3d at 724.

## B. Analysis

Gandee alleges that his trial counsel was ineffective for failing to: (1) call an expert on post-traumatic stress disorder; (2) call defense witnesses who could corroborate Gandee's testimony; (3) voir dire the venire panel on the issue of credibility; (4) effectively question Officer Robbins, including failing to inquire further about the vehicle inventory; (5) object to the information; (6) object to the jury charge; and (7) object to leading questions.

Complaints 1 and 2 both concern trial counsel's failure to call certain witnesses. A claim of ineffective assistance of counsel based on the failure to call witnesses lacks merit in the absence of a showing that the witnesses were available and that the defendant would have benefitted from their testimony. *Wilkerson v. State*, 726 S.W.2d 542, 551 (Tex. Crim. App. 1986); *Wade v. State*, 164 S.W.3d 788, 796 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Without evidence to the contrary, we must presume appellant's counsel made the decision not to call these potential witnesses in the exercise of her reasonable professional judgment. *See Wade*, 164 S.W.3d at 796. The record is silent as to whether the identified witnesses were available to testify and what the content of their testimony would have been. Therefore, counsel's alleged ineffectiveness is not firmly established in the record. *See Thompson*, 9 S.W.3d at 813.

16

Next, Gandee complains that his counsel failed to ask prospective jurors how they would assess the credibility of law enforcement witnesses. Counsel's voir dire decisions fall within the realm of trial strategy, and the record is silent as to counsel's reasons for conducting voir dire as she did. We will not "reverse a conviction on ineffective assistance of counsel grounds when counsel's actions or omissions may have been based upon tactical decisions, but the record contains no specific explanation for counsel's decisions." *Bone*, 77 S.W.3d at 830. We are unable to conclude on this record that trial counsel was ineffective for failing to question prospective jurors about witness credibility. *Cf. Goodspeed*, 187 S.W.3d at 392 ("[W]e cannot conclude that the failure to ask any questions in voir dire constitutes conduct so outrageous that no competent attorney would have engaged in it.").

Next, Gandee complains of counsel's failure to more thoroughly cross-examine Officer Robbins. "Cross-examination is inherently risky, and a decision not to cross-examine a witness is often the result of wisdom acquired by experience in the combat of trial." *Ex parte McFarland*, 163 S.W.3d 743, 756 (Tex. Crim. App. 2005) (citing *Coble v. State*, 501 S.W.2d 344, 346 (Tex. Crim. App. 1973)). It is a sound trial strategy not to attack a sympathetic witness without strong impeachment. *Id*. "Furthermore, cross-examination is an art, not a science, and it cannot be adequately judged in hindsight." *Id*. We note that counsel's cross-examination elicited testimony that Gandee's accident could have occurred long before the officer arrived at the scene and that it was possible Gandee consumed alcohol during that time period. Counsel also questioned Officer Robbins on the possibility that Gandee's behavior could have been attributable to

withdrawal from a prescribed medication and to post-traumatic stress disorder. We cannot conclude from this record that counsel's cross-examination was so unreasonable that no competent attorney would have pursued such a strategy. *See Goodspeed*, 187 S.W.3d at 392.

Next, Gandee contends his counsel was ineffective for failing to object to the information, the jury charge, and to leading questions. We have already concluded that the complained-of jury charge error could only serve to benefit Gandee. Therefore, Gandee is unable to establish that his counsel's failure to object to the charge prejudiced his defense. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142. With respect to the information, Gandee has not identified any way in which the information was defective. It is not ineffective assistance for counsel to forego making frivolous arguments and objections. *See Brennan v. State*, 334 S.W.3d 64, 74 (Tex. App.—Dallas 2009, no pet.); *Edmond v. State*, 116 S.W.3d 110, 115 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

Finally, we are unable to conclude that trial counsel was ineffective for failing to object to leading questions by the State. Despite the general rule disfavoring the use of leading questions on direct examination, "it is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway." *Young v. State*, 10 S.W.3d 705, 713 (Tex. App.—Texarkana 1999, pet. ref'd); *see Wheeler v. State*, 433 S.W.3d 650, 655 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). When the record is silent concerning why defense counsel failed to object to the State's use of leading questions, the appellant fails to rebut the presumption that this conduct

18

constitutes reasonable trial strategy. *See Young*, 10 S.W.3d at 713; *see also Wert v. State*, 383 S.W.3d 747, 757 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Appellant has not carried his burden of rebutting the presumption that counsel's [failure to object to leading questions] might be considered sound trial strategy. The record is silent as to why counsel did not make these objections, and we may not speculate on this issue."). Gandee has failed to demonstrate that his counsel's failure to object was not the result of sound trial strategy.

Gandee is unable to establish both *Strickland* prongs for each alleged instance of ineffectiveness. *See Lopez*, 343 S.W.3d at 142 ("Unless appellant can prove both [*Strickland*] prongs, an appellate court must not find counsel's representation to be ineffective."). Therefore, we overrule appellant's fourth issue.

## V.   CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
31st day of October, 2019.